**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 208.]**

THE STATE OF OHIO, APPELLANT, *v.* ARNETT, APPELLEE.

[Cite as *State v. Arnett*, 2000-Ohio-302.]

*Criminal law—When sentencing judge acknowledges consulting a religious text during deliberations and quotes a portion of that text on the record in the sentencing proceeding, such conduct is not per se impermissible and does not violate the offender's right to due process, when.*

When a sentencing judge acknowledges that he or she has consulted a religious text during his or her deliberations and quotes a portion of that text on the record in the sentencing proceeding, such conduct is not *per se* impermissible and does not violate the offender's right to due process, when the judge adheres to the sentencing procedures outlined in the Revised Code and when the judge's religious references do not impair the fundamental fairness of the sentencing proceeding.

(No. 99-468—Submitted December 14, 1999—Decided March 15, 2000.)

APPEAL from the Court of Appeals for Hamilton County, Nos.
C-980172 and C-980173.

————————

{¶ 1} In November 1997, the Grand Jury of Hamilton County indicted appellee, James F. Arnett, on ten counts of rape in violation of R.C. 2907.02(A)(1)(b). Each count of the indictment alleged the rape of the same child, who was under thirteen years of age at the time of the alleged conduct, and each count carried a specification that Arnett was a sexually violent predator under R.C. 2950.09(A). Arnett eventually entered a plea of guilty to all ten counts. When Arnett entered his pleas, the state agreed to dismiss allegations of force that appeared in Counts I and II of the indictment and agreed to submit the issue of whether Arnett was a sexual predator to the judge during sentencing. Counsel for

both parties notified the court that there had been "no discussion or agreement on the appropriate sentence in this case." The trial court accepted Arnett's pleas, entered a finding of guilty on all ten counts, and scheduled sentencing for January 1998.

{¶ 2} One day before the scheduled sentencing proceeding, the grand jury indicted Arnett for a single additional count of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(5). This indictment concerned computer disks containing obscene images.

{¶ 3} The following day, the parties appeared before the court as scheduled for sentencing on the ten rape counts. At that time, the court accepted Arnett's plea of guilty to the new pandering charge, and proceeded to sentencing on all eleven counts. Due to the nature of this appeal, we now provide a detailed summary of the sentencing proceeding.

{¶ 4} Defense counsel began the sentencing hearing by introducing the testimony of a psychologist, who discussed Arnett's experience as a victim of sexual abuse in his youth, Arnett's difficulties with substance abuse, and other emotional problems. On direct examination, the psychologist opined that there was a need to "safeguard the community" and to provide from five to eight years of "continuing * * * and intensive" treatment. The court permitted the state to cross-examine the psychologist. On cross-examination, the psychologist agreed that Arnett had a "very strong appetite" for sexual contact and that these urges would remain for the rest of Arnett's life. The psychologist also agreed with the state that the victim had been "severely traumatized in her ability to form healthy relationships with other people."

{¶ 5} Following the psychologist's testimony, defense counsel asked the court if it had reviewed the letters sent from Arnett's family. The judge indicated that she had reviewed at least five letters from various individuals, and then permitted defense counsel to make a statement. Arnett's attorney highlighted his

2

client's struggle with chemical dependency and urged the court to recommend that Arnett receive treatment from the Department of Corrections. Arnett's older sister spoke briefly and described their family's disadvantaged background. The assistant prosecuting attorney then discussed Arnett's likelihood of recidivism, as well as the harm suffered by his victim, and urged the court to keep Arnett "where he belongs for the rest of his days."

{¶ 6} The sentencing judge reviewed the facts of the case on the record, noting the age of the victim, the nature of the offense, and the "demonstrated use of abuse in regards to the child." The court then determined that Arnett was a sexual predator under R.C. Chapter 2950. Finally, the court permitted Arnett to make a statement. Arnett said, "I'm very remorseful, very remorseful for what I did. I definitely am going to seek as much treatment as I can. And I'm never going to do this again ever. * * * And it was just a silly thing that started and got totally out of control."

{¶ 7} Just before pronouncing sentence, the sentencing judge began the monologue that is the basis of the instant appeal:

"So, Mr. Arnett, I was struck by the idea of who is James Arnett through this particular case. And I thought about it all last evening as I was trying to determine in my mind what type of sentence you deserved in this particular case."

{¶ 8} At this point, the judge commented on the photographs and letters that several interested parties had submitted to the court on Arnett's behalf. The judge referred to submissions from the victim's father and mother, statements from the victim herself, and testimony provided by the defendant's psychologist at the sentencing hearing. As she discussed these submissions, the judge made several references to the victim's young age. She mentioned the concern that the victim's father had for his "little girl," and noted that "[a] child should not know" the sexually graphic details that Arnett introduced her to. The judge told Arnett that he

3

had "robbed that child of that whole sense of growing up." The judge concluded the proceedings with the following comments:

"Recently, Mr. Arnett, I had a murder case of an individual who had no remorse and the sentence was 20 years, and I thought about that in regards to sentencing you. Because I was looking for a source, what do I turn to, to make, to make that determination, what sentence you should get. And I thought in regards to a 20-year sentence, that individual, that victim, who's the victim of that case, at least is gone to their reward, they're not hurting anymore. But for Rachel, the rest of her life, unless she takes care of herself, she's hurting.

" * * * And in looking at the final part of my struggle with you, I finally answered my question late at night when I turned to one additional source to help me. And basically, looking at Rachel on one hand, looking at the photographs of you happily as a child, and looking at the photographs of downloading that came from your computer, I agree they're very sad photographs, they're pure filth, it just tells me how ill you are.

"And that passage where I had the opportunity to look is Matthew 18:5, 6. 'And whoso shall receive one such little child in my name, [*sic*] receiveth me. But, [*sic*] whoso shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck, and that [*sic*] he were drowned in the depth of the sea.'[1]

"Pandering obscenity count, one year. Ten counts of rape, five years on each, running consecutive. Sentence, 51 years.

"Mr. Arnett, I hope God has mercy on you and the hell that you have created. Thank you."

**{¶ 9}** The proceedings concluded immediately following these comments.

---

1. As the court of appeals noted, the biblical passage as it appears in the transcript from the sentencing proceeding contains slight differences from the Bible, King James version. The notation "*sic*" marks two commas not in the original and the omission of italics from the word "that."

{¶ 10} Arnett appealed his sentence and conviction to the Court of Appeals for Hamilton County, asserting three assignments of error. In his first assignment of error, Arnett raised two challenges to the sentencing judge's concluding remarks. First, Arnett argued that the judge's religious beliefs were neither a mandatory nor a relevant factor for consideration under R.C. 2929.12. Arnett also claimed that the sentencing judge's religious references violated the First Amendment to the United States Constitution, as well as Section 7, Article I of the Ohio Constitution. In his second assignment of error, Arnett argued that the trial court failed to make the findings required under R.C. 2929.14(E)(3) and 2929.19(B)(2)(c) to impose consecutive sentences. Finally, Arnett argued that the trial court erred when it accepted his plea without informing him that the maximum penalty for his offenses included the possible imposition of consecutive sentences.

{¶ 11} The court of appeals treated Arnett's first two assignments of error together and held that a trial judge's religious beliefs are not a factor that may be considered under the sentencing provisions of the Revised Code. Although the court of appeals determined that religious comments during sentencing are not *per se* impermissible, the court concluded that the sentencing judge's references to the Book of Matthew indicated that her religion had a "heavy influence," or was a "determining factor," in the sentence that she imposed. For this reason, the court of appeals held that the sentencing judge acted outside the sentencing guidelines and violated Arnett's due process rights.

{¶ 12} The court of appeals thus affirmed the trial court's adjudication of guilt based on the trial court's acceptance of Arnett's pleas, but vacated the sentence and remanded for resentencing. A dissenting judge on the panel determined that the trial judge's personal religious views were not the basis of her sentencing decision, that the quoted biblical passage merely reflected society's interest in protecting children, and that the judge imposed Arnett's sentence in full compliance with the Revised Code.

**{¶ 13}** Though Arnett mentioned the First Amendment to the United States Constitution and Section 7, Article I of the Ohio Constitution in his first assignment of error to the court of appeals, Arnett did not develop an Establishment Clause argument in his appellate brief, and the court of appeals did not pass on such an argument. Likewise, though Arnett mentioned these constitutional provisions in his second proposition of law to this court, Arnett did not articulate an Establishment Clause challenge to the judge's conduct in his arguments to this court. We therefore limit our discussion today to those issues that the parties have preserved and briefed for our review.

**{¶ 14}** The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Michael K. Allen*, Hamilton County Prosecuting Attorney, *James Michael Keeling*, *Ronald Springman* and *Philip R. Cummings*, Assistant Prosecuting Attorneys, for appellant.

*Charles H. Bartlett, Jr.*, for appellee.

*Mark B. Greenlee*, *pro se*, urging reversal as *amicus curiae*.

*Abby R. Levine*, ACLU Cooperating Attorney, urging affirmance for *amicus curiae* American Civil Liberties Union of Ohio Foundation, Inc.

_____

**COOK, J.**

**{¶ 15}** This case asks whether the sentencing judge violated the statutory requirements of the Revised Code or the constitutional dictates of due process when she acknowledged referring to the Bible during her deliberations, and then quoted a biblical passage on the record at the sentencing proceeding. Because we determine that the trial court complied with the applicable provisions of R.C. Chapter 2929 and that the judge's reference to the Bible did not impair the

fundamental fairness of the proceedings, we reverse the judgment of the court of appeals and reinstate the trial court's sentence.

{¶ 16} In Part I, below, we demonstrate that this trial judge's particular reference to the Bible did not offend the sentencing provisions of the Revised Code. Turning to the Bible during her deliberations merely assisted the judge in weighing a seriousness factor required for the court's consideration under R.C. 2929.12, and the Code does not prohibit the trial judge from describing the nature of her deliberations on the record. In Part II, we examine the guarantees of due process in the context of a sentencing proceeding, and conclude that the judge's acknowledged reference to the Bible did not violate Arnett's due process right to a fundamentally fair sentencing hearing.

## I. R.C. Chapter 2929

{¶ 17} Arnett entered guilty pleas to ten counts of rape, a first-degree felony, and one count of pandering obscenity involving a minor, a fourth-degree felony. R.C. 2907.02(A)(1)(b); R.C. 2907.321(A)(5). A court imposing penalties for these felonies must comply with the procedures outlined in R.C. 2929.11 *et seq.* The court of appeals noted that these provisions limit a sentencing court's discretion, and determined that "the religious beliefs of the trial judge are not a statutory factor that may be considered" during sentencing.

## A. R.C. 2929.11

{¶ 18} In general, the sentencing judge must adhere to the overriding purposes of felony sentencing described in R.C. 2929.11. This section provides that a sentence shall punish the offender and protect the public from future offenses by the offender and others. R.C. 2929.11(A). It also provides that a court "shall not base the sentence upon the * * * religion *of the offender.*" (Emphasis added.) R.C. 2929.11(C). Arnett misreads R.C. 2929.11(C) to be a general prohibition on the "consideration of religious beliefs or * * * dogma" by a sentencing judge. This section, however, specifically prohibits a sentencing judge from discriminating

against an offender on the basis of the *offender's* religion. R.C. 2929.11(C). It does not, therefore, support the court of appeals' decision to vacate Arnett's sentence.

B. The R.C. 2929.12 Seriousness and Recidivism Factors

{¶ 19} R.C. 2929.12(A) requires the sentencing judge to consider the applicable seriousness and recidivism factors outlined in R.C. 2929.12(B), (C), (D), and (E) as she exercises her discretion to determine the most effective way to comply with the purposes and principles of sentencing outlined in R.C. 2929.11. A catchall provision in R.C. 2929.12(A) also permits the sentencing judge to consider "any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A).

{¶ 20} The parties here agree that the sentencing judge properly considered the R.C. 2929.12 seriousness and recidivism factors even though it would seem that the court need not consider those factors for the rape charges. Rape carries a mandatory prison term under R.C. 2929.13(F)(2) and the statutory mandate to assess the factors arises "*[u]nless* a mandatory prison term is required by division (F) of section 2929.13 or section 2929.14." (Emphasis added.) R.C. 2929.12(A).[2] Nonetheless, the pandering charge merits the judge's consideration of the applicable seriousness and recidivism factors before imposing Arnett's sentence. R.C. 2929.13(B)(2)(a); R.C. 2929.13(B)(1)(f).

{¶ 21} With this background, we summarize the arguments of the parties before the court as follows: Arnett contends that the Code prohibits the trial judge's acknowledged consideration of the Bible, because "religious consideration" does not appear as one of the seriousness or recidivism factors in R.C. 2929.12(B), (C),

---

2. See *State v. Licardi* (Feb. 4, 1999), Cuyahoga App. No. 72171, unreported, 1999 WL 61003; *State v. Coyle* (Oct. 13, 1997), Clermont App. No. CA97-02-014, unreported, 1997 WL 632836. Under the reasoning in *Licardi* and *Coyle*, the sentencing judge in this case would not have been required to consider the R.C. 2929.12 seriousness and recidivism factors when imposing sentence for Arnett's ten rape convictions, which carry mandatory prison terms under R.C. 2929.13(F)(2). But, see, Ohio Criminal Sentencing Commission, Quick Reference Guide (Oct. 1996), at 1; Griffin & Katz, Ohio Felony Sentencing Law (1998) 286, Section T 1.11.

(D), or (E), and because, he submits, the R.C. 2929.12(A) catchall provision would not embrace such considerations. The state, on the other hand, argues that the Code does not prohibit the judge's acknowledged reference to the Bible during her deliberations. The state views the judge's reference to the particular biblical verse at issue as the "functional equivalent" of the judge's consideration of the seriousness factor in R.C. 2929.12(B)(1), which concerns the *age* of the victim.

{¶ 22} We agree with the state that the sentencing court's reference to the Book of Matthew acknowledged her consideration, during her deliberations, of the societal interest in protecting children. The General Assembly specifically recognized this societal interest in the form of a seriousness factor for the sentencing court to consider under R.C. 2929.12(B)(1). This section requires a judge, when applicable, to consider how the victim's age relates to the seriousness of the offense. It provides:

"(B) The sentencing court shall consider all of the following that apply regarding * * * the victim * * * as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

"(1) The physical or mental injury suffered by the victim of the offense * * * was exacerbated because of the * * * age of the victim." R.C. 2929.12(B)(1).

{¶ 23} The General Assembly thus explicitly instructs sentencing courts to consider how the age of a victim relates to the relative seriousness of an offense when imposing a sentence in order to conform to the overriding purposes of felony sentencing set forth in R.C. 2929.11.

{¶ 24} Here, the sentencing judge followed the General Assembly's mandate as expressed in R.C. 2929.12(B)(1). Arnett pleaded guilty to ten counts of engaging in various sex acts with a five-year-old girl on a continuing basis and to pandering obscenity involving a minor. The testimony at the sentencing hearing amply informed the judge that Arnett's principal victim suffered exacerbated harm

due to her tender years. R.C. 2929.12(B)(1), then, required the sentencing court to consider whether the victim's age made Arnett's conduct more serious than conduct normally constituting the offense.

{¶ 25} The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors. R.C. 2929.12. For this reason, the sentencing judge could have satisfied her duty under R.C. 2929.12 with nothing more than a rote recitation that she had considered the applicable age factor of R.C. 2929.12(B)(1).[3] See *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134. Arnett's sentencing judge, however, helpfully supplemented the record by specifically referring to the young age of the victim and by explaining how the victim's age had exacerbated her injuries. The judge noted that "a child should not know" the sexually graphic details that Arnett exposed her to, and told Arnett that he "robbed that child of that whole sense of growing up and who she is." These remarks confirm that the sentencing court considered the statutory age factor.

{¶ 26} The judge further supplemented the record with the religious remarks at issue in this case. She acknowledged that she had "turned to one additional source" to help her during her deliberations, and she quoted the biblical verse to which she referred. The verse describes the seriousness of offending a "little child" or "one of these little ones." Matthew 18:5, 6. The court explained how this biblical verse aided its "struggle" regarding the proper sentence to impose. Due to the text of this verse, and the judge's stated reason for considering it, we conclude that her reference to the Bible assisted her in determining the *weight* that she would give to a statutory factor—the age of the victim.

---

3. Just prior to adjudicating Arnett a sexual predator, the sentencing judge made one such rote recitation when she noted on the record that she was "considering the age of the victim of the sexually oriented offense."

10

**{¶ 27}** This court has held that the individual decisionmaker has the discretion to determine the weight to assign a particular statutory factor. *State v. Fox* (1994), 69 Ohio St.3d 183, 193, 631 N.E.2d 124, 132, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 376, 582 N.E.2d 972, 978. A discretionary decision necessitates the exercise of personal judgement, and we have determined that when making such judgments, the sentencing court "is not required to divorce itself from all personal experiences and make [its] decision in a vacuum." *State v. Cook* (1992), 65 Ohio St.3d 516, 529, 605 N.E.2d 70, 84, citing *Barclay v. Florida* (1983), 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134. For this reason, we have previously permitted a judge in a death-penalty case to refer, during sentencing, to a personal friend of his who was murdered. *Id.*

**{¶ 28}** This court has also recognized that there are limits to a court's discretion when the court refers to external sources while weighing a statutory factor. See *State v. Bays* (1999), 87 Ohio St.3d 15, 31, 716 N.E.2d 1126, 1143. In *Bays*, a court of appeals engaging in a review of a death sentence quoted at length from a two-year study of two hundred sixty-seven cocaine users. Based on the authors' hypothesis concerning addiction and recidivism, the court of appeals decided that the appellant's addiction was not a significant mitigating factor. *Id.* We determined that the court of appeals improperly relied on this hypothesis because the court based its factual conclusions "upon what amounted to an expert opinion, which should have been subject to adversarial testing." *Id.*, citing *Gardner v. Florida* (1977), 430 U.S. 349, 360-362, 97 S.Ct. 1197, 1205-1207, 51 L.Ed.2d 393, 403-404.

**{¶ 29}** We distinguish the judge's reference to the Bible in this case from the error committed by the court of appeals in *Bays*. In *Bays*, the court used a highly specific scientific study as a "basis for drawing case-specific factual inferences about the relation between Bays's addiction and his behavior." *State v. Bays*, 87 Ohio St.3d at 31, 716 N.E.2d at 1143, fn. 5. Here, in contrast, the sentencing judge

referred to a biblical verse containing the same general message explicitly recognized in R.C. 2929.12(B)(1)—that offenses against children are especially serious.

{¶ 30} The judge's acknowledged reference to the Bible here constituted a permissible exercise of her discretion. The judge did not *add* an impermissible factor to her analysis; rather, she *acknowledged an influence* upon her consideration of an explicitly permitted factor. Much like the judge's background, education, and moral values, the judge's insight from the Bible guided the judge in weighing the statutorily permissible age factor during her deliberations and aided her in justifying, in her mind, the lawful sentence she imposed. See *State v. Fox; State v. Cook, supra.*

{¶ 31} Because R.C. 2929.12(B) requires a sentencing judge to consider how a victim's age exacerbates the physical or mental injury suffered, it would be a significant and censorial step for this court to prohibit judges from accurately describing the nature of these considerations on the record. As the state's *amicus* notes, a *per se* rule prohibiting all references to religious texts by a sentencing judge would amount to this court's imposition of a particular and restrictive model of judicial decisionmaking. Such a model would prohibit references to religious convictions in the oral or written justifications of judicial decisions, even though such considerations may unavoidably surface during the judge's private deliberations.[4] The sentencing scheme enacted by the General Assembly does not

---

4. The brief of Mark Greenlee, *amicus curiae* in support of the state, discusses four possible models of judicial decisionmaking. The "separatist" model would prohibit any reliance upon religious convictions both during a judge's internal deliberations and in the oral or written justifications for the judge's decisions. Under a "publicist" model, which might exist in a society ruled exclusively by religious laws, a judge would always justify his or her decisions with religious considerations, even if the judge did not actually rely on such considerations during his or her deliberations. Under the "privatist" model, a judge might include religious considerations during the deliberative stage, but could not make oral or written religious references in the justification stage. Finally, under the "wholist" model, a judge could rely on religious convictions, at least to some extent, in both the deliberation and justification stages.

adopt such a restrictive model for the sentencing judge. Indeed, as this court recently noted, some statutes *require* the sentencing judge to state both the findings *and the reasons* for those findings on the record. See *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134; see, also R.C. 2929.19(B)(2).

{¶ 32} Because we find that the judge's acknowledged consideration of the particular biblical verse in this case constituted a permissible exercise of her discretion to weigh the R.C. 2929.12(B)(1) factor, we need not determine whether this specific religious verse, or whether religious texts in general, may qualify as "any other factor[s] that are relevant" under R.C. 2929.12(A).

II. Due Process and the Sentencing Proceeding

{¶ 33} The court of appeals determined that "[b]y factoring in religion" during the sentencing proceeding, the sentencing court violated Arnett's due process rights. We agree with the court of appeals that consideration of religious beliefs or religious texts by a sentencing judge may violate an offender's due process rights when such considerations constitute the basis for the sentencing decision and thereby undermine the fundamental fairness of the proceeding. Nevertheless, as we explain more fully below, the biblical reference here did not result in a violation of Arnett's right to a fundamentally fair sentencing hearing.

A. Due Process, Sentencing Proceedings, and Fundamental Fairness

{¶ 34} The United States Supreme Court has recognized that even a sentence within the limits of a state's sentencing laws may violate due process if the sentencing proceedings are fundamentally unfair. *Townsend v. Burke* (1948), 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, 1693; see, also, *Gardner v. Florida* (1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393, 402 ("[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process"), citing *Witherspoon v. Illinois* (1968), 391 U.S. 510, 521-523, 88 S.Ct. 1770, 1776-1778, 20 L.Ed.2d 776, 784-786.

**{¶ 35}** In *Townsend*, *supra*, the Supreme Court addressed the habeas corpus petition of a prisoner who had pleaded guilty to robbery and burglary but alleged that the court deprived him of due process during his sentencing proceeding. The Pennsylvania sentencing judge, just before imposing sentence, addressed the offender and recounted a list of prior offenses, remarking: "1937, receiving stolen goods, a saxophone. What did you want with a saxophone? Didn't hope to play in the prison band then, did you?" *Townsend*, 334 U.S. at 740, 68 S.Ct. at 1255, 92 L.Ed. at 1693. The Supreme Court determined that "[t]he trial court's facetiousness casts a somewhat somber reflection on the fairness of the proceeding when we learn from the record that actually the charge of receiving the stolen saxophone had been dismissed." *Id.* The record also revealed other blatant inaccuracies in the judge's concluding comments. *Id.* The Supreme Court held that the petitioner's sentence was "inconsistent with due process," because it lacked an essential requirement of "fair play," since the court sentenced the petitioner "on the basis of assumptions concerning his criminal record which were materially untrue." *Id.*, 334 U.S. at 741, 68 S.Ct. at 1255, 92 L.Ed. at 1693.

**{¶ 36}** The *Townsend* court carefully narrowed the scope of the fairness standard that it applied, saying, "[I]t is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct * * *, that renders the proceedings lacking in due process." *Id.*

**{¶ 37}** Since *Townsend*, several federal circuit courts have recognized that reviewing courts may vacate sentences as violative of due process when the sentencing judge's comments reveal that the court imposed or enhanced the offender's sentence because of improper considerations such as the offender's race or national origin, *United States v. Borrero-Isaza* (C.A.9, 1989), 887 F.2d 1349,

false or unreliable information, *United States v. Safirstein* (C.A.9, 1987), 827 F.2d 1380, or parochialism, *United States v. Diamond* (C.A.4, 1977), 561 F.2d 557, 559.

B.  Fundamental Fairness and Religious Comments:  *United States v. Bakker*

**{¶ 38}** In the principal case discussed by the parties here, the Fourth Circuit Court of Appeals applied the rules described above in the specific context of religious comments by a sentencing judge.  *United States v. Bakker* (C.A.4, 1991), 925 F.2d 728, 740, citing *Gardner, Borrero-Isaza,* and *Safirstein, supra*.  The *Bakker* court recognized that even though a sentencing judge represents "the embodiment of public condemnation and social outrage" and a judge "can lecture a defendant as a lesson to that defendant and as a deterrent to others," fundamental notions of due process act as a constraint on the trial court's discretion in the sentencing proceeding.  *Bakker*, 925 F.2d at 740.

**{¶ 39}** In *Bakker*, which concerned the sentencing of a well-known televangelist after convictions for mail and wire fraud, the district judge made the following statement on the record about the offender:  "He had no thought whatever about his victims and those of us that do have a religion are ridiculed as being saps from money-grubbing preachers or priests."  *Id*.  The Fourth Circuit vacated the sentence, holding that courts "cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it. * * * Regrettably, we are left with the apprehension that the imposition of a lengthy prison term here may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed."  (Emphasis added.)  *Id.*, 925 F.2d at 740-741.

**{¶ 40}** The *Bakker* court emphasized that it vacated the sentence only because the district judge's "*personal religious principles*" were "*the basis*" of the sentencing decision.  (Emphasis added.)  *Id*., 925 F.2d at 741.  By contrast, here the judge's disclosed religious principle mirrored a sentencing factor in the Ohio

Revised Code. Moreover, the biblical passage could not be said to be the primary premise for the judge's sentencing decision, as she considered various statutorily sanctioned bases. *Bakker*, therefore, does not support the court of appeals' decision to vacate Arnett's sentence.

### 1. The Limits of *Bakker*

{¶ 41} The *Bakker* court underscored its "genuine reluctance" to vacate the sentence and repeatedly stressed the limits of its decision. *Id.*, 925 F.2d at 741. The court noted, "Our Constitution, of course, does not require a person to surrender his or her religious beliefs upon the assumption of judicial office." *Id*. at 740. The court also recognized that judges occasionally misspeak, and that "every ill-advised word will not be the basis for reversible error." *Id.* at 741. The *Bakker* court vacated the sentence only because the judge's "intemperate" comments revealed that an "*explicit intrusion of personal religious principles*" was "*the basis*" of the sentencing decision. (Emphasis added.) *Id.*

{¶ 42} Recognizing the limits stressed by the *Bakker* court, federal courts interpreting *Bakker* have refused to vacate sentences unless the trial judge's religious remarks create an appearance of sentencing based on improperly considered, highly personal beliefs. In a recent example, the Fourth Circuit affirmed a sentence even though the sentencing court commented on the fact that the defendant considered using his church to pass classified documents to a South Korean military attaché, and declared this behavior to be "horrible hypocrisy." *United States v. Kim* (Jan. 14, 1999), C.A.4 No. 97-4606, unreported, 1999 WL 12924, disposition reported at 172 F.3d 45. Though Kim argued that *Bakker* prohibited the judge's remarks, the Fourth Circuit found no constitutional violation in the judge's comment, which the judge made after deciding not to depart from the federal guidelines. *Id.* at *1.

{¶ 43} Likewise, the Seventh Circuit affirmed a sentence that an offender challenged on due process grounds when the sentencing judge spoke of "personal

considerations that [the offender] brings to me." *United States v. Autullo* (July 12, 1995), C.A.7 No. 95-1020, unreported, 1995 WL 417577, disposition reported at 62 F.3d 1419. Though the offender in *Autullo* attempted to analogize the judge's comments to those disallowed in *Bakker*, based on the judge's use of the phrase "personal considerations," the *Autullo* court determined that the sentencing judge's comments "did not demonstrate personal animus but were an expression of outrage at the great harm and tragic results that Autullo's crimes had on the youth of the community." *Id.* at *3.

{¶ 44} In a case where the judge's specific comments were more similar to those presently before us, a Rhode Island district court denied a habeas corpus petition when the sentencing judge referred to a biblical verse by stating that "no man should take more than he is willing to give." *Gordon v. Vose* (D.R.I. 1995), 879 F.Supp. 179. The *Gordon* court determined that the sentencing judge expressed no personal religious bias of the type *Bakker* prohibited, but that the judge simply stated a generally accepted proposition that if one commits a serious crime, he or she must expect to receive a severe punishment. *Id.* at 185.

{¶ 45} Several state supreme courts, though they cite *Bakker* with approval, have declined to vacate sentences where the judge's religious comments merely acknowledge generally accepted principles, as opposed to highly personal religious beliefs that become the basis for the sentence imposed. See, *e.g.*, *Poe v. State* (1996), 341 Md. 523, 533, 671 A.2d 501, 505 (upholding sentence when sentencing judge said, "I still believe in good old-fashioned law and order, the Bible, and a lot of things that people say I shouldn't believe anymore" prior to sentencing); *Gordon v. State* (R.I. 1994), 639 A.2d 56, 56-57 (upholding sentence when sentencing judge referred to Bible by saying that "no man takes more than he's willing to give"); *People v. Halm* (1993), 81 N.Y.2d 819, 595 N.Y.S.2d 380, 611 N.E.2d 281 (upholding sentence for sodomy when sentencing judge referred to "Biblical times" and expressed his opinion about the seriousness of the crime).

17

**{¶ 46}** Taken together, these federal and state decisions support our conclusion that *Bakker* in no way supports a *per se* rule prohibiting all religious references by a sentencing judge. Rather, *Bakker* represents the exceptional case where a judge's religious comments implicate the fundamental fairness of a sentencing proceeding by revealing that the judge's personal religious views were the primary basis for the sentencing decision.

2. Applying *Bakker* to the Present Case

**{¶ 47}** We agree with the state that *Bakker* is distinguishable from the present case. The sentencing judge's comments in *Bakker* revealed that he had been personally offended, as a religious person, by the offender's frauds. When he said "those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests," the sentencing judge in effect inserted himself as a party to the case—aligning himself with the plaintiffs whom the televangelist defrauded. As the court in *Gordon v. Vose* noted, the sentencing judge in *Bakker* was "expressing a *personal* religious preference and then sentencing petitioner for violating it." (Emphasis added.) 879 F.Supp. at 185.

**{¶ 48}** Here, on the other hand, Arnett's sentencing judge cited a religious text merely to acknowledge one of several reasons—"one additional source"—for assigning significant weight to a legitimate statutory sentencing factor. The particular passage she cited mirrored the Revised Code's seriousness factor regarding the victim's young age. R.C. 2929.12(B)(1). Much like the comments allowed in *United States v. Autullo*, and *Gordon v. Vose*, *supra*, the text of the biblical verse that the judge cited here reflects the general proposition that offenses against young victims are especially serious—a principle that the General Assembly explicitly recognized in R.C. 2929.12(B)(1).

**{¶ 49}** Arnett contends that the sentencing judge in this case "considered the heinousness of the crime as expressed in her own religious teachings as the *most essential factor* in determining the length of the sentence to be served." (Emphasis

added.) We disagree. If the sentencing judge had so relied on the biblical passage she referred to, which, when taken literally, recommends death by drowning for those who injure children, the judge presumably would have imposed a sentence much closer to the statutory maximum than the sentence she actually imposed. See R.C. 2929.14(A).

{¶ 50} The court of appeals determined that a constitutional violation occurred here under *Bakker* because, in its view, the Book of Matthew functioned as a "tiebreaker" for a sentencing judge torn between a more lenient or a more harsh sentence. *State v. Arnett* (Feb. 5, 1999), Hamilton App. Nos. C-980172 and C-980173, unreported, at 5, 1999 WL 65632. Though a fair reading of the record supports the court of appeals' conclusion that the judge's reference to the Book of Matthew assisted her in finally resolving her deliberative struggle, *Bakker* merely prohibits a judge's personal religious principles from being "*the basis* of a sentencing decision." (Emphasis added.) *Bakker,* 925 F.2d at 741. Here, the record discloses many factors that cumulatively formed the basis of the court's sentence, including the testimony and letters provided to the court on behalf of Arnett and the victim, the psychologist's testimony regarding the harm suffered by the victim, and the nature of the multiple offenses. The Bible was but one factor, among many, that supported this judge's legally unremarkable decision to assign significant weight to the seriousness of Arnett's offenses against young victims.

### III. Conclusion

{¶ 51} For the foregoing reasons, we hold that when a sentencing judge acknowledges that he or she has consulted a religious text during his or her deliberations and quotes a portion of that text on the record in the sentencing proceeding, such conduct is not *per se* impermissible and does not violate the offender's right to due process, when the judge adheres to the sentencing procedures outlined in the Revised Code and when the judge's religious references do not impair the fundamental fairness of the sentencing proceeding.

**{¶ 52}** Like the court in *Bakker*, we emphasize the limits of our holding today. We agree with the *Bakker* court's recognition of the fundamental constraints of due process in a sentencing proceeding. We also agree that a sentencing judge's religious comments may violate an offender's due process rights when they reveal an "explicit intrusion of personal religious principles as the basis of a sentencing decision." *Bakker*, *supra*, 925 F.2d at 741. We determine, however, that no such constitutional violation occurred in this case.

**{¶ 53}** We note that comments by a sentencing judge may implicate this state's ethical rules concerning impartiality and bias. One such rule provides that "[a] judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, *by words or conduct* manifest bias or prejudice, including but not limited to bias or prejudice based upon * * * *religion* * * * ." (Emphasis added.) Canon 3(B)(5) of the Code of Judicial Conduct. We highlight this rule as a cautionary reminder; we do not imply that an ethical violation occurred in this case.

**{¶ 54}** The Eighth District Court of Appeals referred to these ethical considerations when it determined that another sentencing judge's comments, though they did not affect the outcome of the case, went "well beyond the permissible limits of rhetorical hyperbole." *State v. Conner* (June 27, 1996), Cuyahoga App. No. 65385, unreported, at 11, 1996 WL 355287. In its analysis of these comments, the *Conner* court included a quotation from Benjamin N. Cardozo, which—though not a part of our holding—bears repeating here, lest our decision today be misread as a license for sentencing judges to preach from the bench:

" 'The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or goodness. * * * He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is

the field of discretion that remains.' " (Footnote omitted.) *Id.*, quoting Benjamin N. Cardozo, The Nature of the Judicial Process (1991), at 141.

{¶ 55} For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

—————————————