The STATE of Ohio, Appellee,

v.

HOLMES, Appellant.

[Cite as *State v. Holmes,* 159 Ohio App.3d 501, 2005-Ohio-52.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19975.

Decided Jan. 7, 2005.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Jill R. Sink, Assistant Prosecuting Attorney, for appellee.

Michael Wright, for appellant.

FAIN, Presiding Judge.

{¶ 1} Gina L. Holmes appeals from her conviction and sentence upon two counts of aggravated vehicular homicide, one count of aggravated vehicular assault, and one count of vehicular assault, following a no-contest plea. Holmes contends that the trial court erred in imposing its sentence upon her because her sentence was improperly based on the trial court's religious views and values, in violation of her due process rights. We conclude that the trial court did not err in its sentencing of Holmes, because it complied with the applicable provisions of R.C. Chapter 2929, and its religious reference did not impair the fundamental fairness of the proceedings.

{¶ 2} Holmes also contends that the trial court erred in imposing its sentence upon her because the court was improperly influenced by a recommendation from the victim's family that the trial court impose the maximum sentence on Holmes. We conclude that the record fails to portray error in this respect, because the record does not reflect that the victim's family made a recommendation for the appropriate sanction to be imposed on Holmes.

{¶ 3} Holmes finally contends that the trial court erred in incorrectly informing her that she could be subject to a period of postrelease control of up to five years after her release from the Ohio Reformatory for Women. We conclude that no prejudicial error occurred, because even though the trial court did incorrectly inform Holmes that she could be subject to a period of postrelease control of up to five years, Holmes was not prejudiced, given that she could actually only be subject to a period of postrelease control of up to three years. Holmes has made

no credible demonstration that this inaccuracy was a factor in her decision to plead no contest.

{¶ 4} Accordingly, the judgment of the trial court is affirmed.

## I

{¶ 5} In November, 2002, Gina L. Holmes was indicted on two counts of aggravated vehicular homicide, one count of aggravated vehicular assault, and one count of vehicular assault. In May, 2003, Holmes entered a plea of no contest to all four counts. The trial court held a sentencing hearing and heard statements made by Holmes, Holmes's attorney, and Casey Wasmuth, the brother of the decedent, Jeana Cassell. After hearing the statements, the trial court stated as follows:

{¶ 6} "I have here many letters from the family. I also have—what's been fascinating is they've provided me with copies of essays that Geanna [sic] had written. And I don't know what the system will ultimately do for your sister, your Mom, but she certainly lived a life worth living and she will not be a statistic.

{¶ 7} "If any of you were with me, I've been touched by her writings. I've been touched by her wrong [sic] words which say she was prepared for death though she did not expect it. That she looked forward to the heavenly kingdom and a large mansion that belonged to God where he had a special room just for her, filled with all that she had loved in life.

{¶ 8} "I believe she's there now and no matter what I do here today won't make up for that loss in your lives. No matter what I do today won't be justice. Justice belongs to God as I've told you. Justice isn't perf—justice is perfect and the best we can do as human beings is try and be careful.

{¶ 9} "Ms. Holmes, I've looked at the seiouness [sic]—Seriousness and Recidivism factors of Sentencing and—and I've looked at the laws of sentencing as they apply to a case like this. And whatever number I pick of years for you to be sentenced to, it will be wholly inadequate for the family and I can only pray that it will be adequate for your—for your soul and for our community, that they never have to face you driving down the street again so that someone ends up dead. I don't know what that number is really, but I have to take a stab at it.

{¶ 10} "I look at the Purposes and Principles of Sentencing and it requires me to take note of the fact that you've never been to prison before. In fact, this is your first felony. For that reason, the State of Ohio would say that you should get the minimum under 2929.14(B), that's a two-year sentence.

{¶ 11} "But although you call this an accident and you wish it wouldn't have happened, your three prior D.U.I.'s raise this to a level beyond accident and much closer to a level of intentional than a—than a regular first-time offender might face in this case. You had a D.U.I. in 1981, again in 1984, again in 1996. With a Reckless Operation somewhere in there as well. In 2002 I note you had a Speeding and Open Container. You were waitin' to kill somebody.

{¶ 12} "I therefore think that to give you two years would demean the seriousness of this offense and it would fail to adequately protect the public.

{¶ 13} "Therefore, I'm gonna sentence you, Ma'am, to six years in the Corrections Reception Center—I'm sorry, the Ohio Reformatory for Women.

{¶ 14} "Now, when you're released from the Ohio Reformatory for Women, you will have a period of Post–Release Control that can last up to five years. If you violate the terms and conditions of your Post–Release Control, you will—the Adult Parole Authority can either make your sentence last longer—I'm—your Post–Release Control last longer. They can make your sanctions more restrictive or they can send you back to prison for up to three years.

{¶ 15} "If you commit another felony after you—while you're on Post–Release Control, then that three years can be tacked on to whatever sentence you get for the new felony, either by the Court or by the Adult Parole Authority.

{¶ 16} "Your license will be suspended for the remainder of your life. You will never have driving privileges again.

{¶ 17} "The best I can do is be very careful. I doubt that it's careful enough for the family involved. I hope it's careful enough for this community."

{¶ 18} The trial court sentenced Holmes to be imprisoned for six years on Count One, aggravated vehicular homicide, a felony of the second degree; four years on Count Two, aggravated vehicular assault, a felony of the third degree; four years on Count Three, aggravated vehicular homicide, a felony of the third degree; and one year on Count Four, vehicular assault, a felony of the fourth degree, to be served concurrently with each other for a total of six years of imprisonment. The trial court also permanently revoked Holmes's driver's license on Count One and Count Three, and suspended Holmes's driver's license for a term of ten years on Count Two and a term of one year on Count Four. From her conviction and sentence, Holmes appeals.

II

{¶ 19} Holmes's sole assignment of error is as follows:

{¶ 20} "The trial court erred in imposing a sentence contrary to law and in reliance on inappropriate factors."

{¶ 21} Holmes first contends that the trial court erred by improperly basing its sentencing decision upon the judge's religious views and values, in violation of her due process rights. Holmes argues that the judge's comment that he prays that the sentence imposed will be "adequate * * * for your soul" was an improper basis for her sentence. Relying on *State v. Arnett* (Feb. 5, 1999), Hamilton App. Nos. C–980172 and C–980173, 1999 WL 65632, Holmes contends that a trial court's discretion in sentencing is limited by various statutory factors it must consider and that religious beliefs held by the judge are not a statutory factor that may be considered.

{¶ 22} In reversing *Arnett,* the Ohio Supreme Court stated, "We agree with the court of appeals that consideration of religious beliefs or religious texts by a sentencing judge may violate an offender's due process rights when such considerations constitute the basis for the sentencing decision and thereby undermine the fundamental fairness of the proceeding." *State v. Arnett* (2000), 88 Ohio St.3d 208, 217, 724 N.E.2d 793. However, the Ohio Supreme Court went on to hold that "when a sentencing judge acknowledges that he or she has consulted a religious text during his or her deliberations and quotes a portion of that text on the record in the sentencing proceeding, such conduct is not *per se* impermissible and does not violate the offender's right to due process, when the judge adheres to the sentencing procedures outlined in the Revised Code and when the judge's religious references do not impair the fundamental fairness of the sentencing proceeding." Id. at 222, 724 N.E.2d 793. The Ohio Supreme Court stressed the limits of its holding, emphasizing that "a sentencing judge's religious comments may violate an offender's due process rights when they reveal an 'explicit intrusion of personal religious principles as the basis of a sentencing decision.'" Id., quoting *United States v. Bakker* (C.A.4., 1991), 925 F.2d 728, 741. The Ohio Supreme Court reversed the First District Court of Appeals, holding that the facts in *Arnett* did not establish a constitutional violation where "the trial court complied with the applicable provisions of R.C. Chapter 2929 and the judge's reference to the Bible did not impair the fundamental fairness of the proceedings." Id. at 212, 222.

{¶ 23} We conclude that the trial court in this case also complied with the applicable provisions of R.C. Chapter 2929 and that the judge's religious comment did not impair the fundamental fairness of the proceedings. R.C. 2929.11(A) provides: "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to

the victim of the offense, the public, or both." The trial court has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11, but must consider the seriousness and recidivism factors listed in sections R.C. 2929.12(B), (C), (D), and (E). R.C. 2929.12(A). The trial court may also "consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A). "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *Arnett*, 88 Ohio St.3d at 215, 724 N.E.2d 793, citing R.C. 2929.12. A rote recitation by the trial court that it has considered applicable factors under R.C. 2929.12 is sufficient for the trial court to satisfy its duty. Id.

{¶ 24} The trial court in this case stated that it looked at the sentencing guidelines, including the seriousness and recidivism factors. The trial court noted that it took into consideration that Holmes had never been to prison before and that this was her first felony. The trial court also noted that Holmes had three prior convictions of driving under the influence, a reckless-operation conviction, and speeding and open-container convictions. Holmes's contention that her sentence was improperly based on the judge's religious views is based on the following statement made by the trial court:

{¶ 25} "And whatever number I pick of years for you to be sentenced to, it will be wholly inadequate for the family and I can only pray that it will be adequate for your—for your soul and for our community, that they never have to face you driving down the street again so that someone ends up dead."

{¶ 26} We conclude that the trial court's reference to Holmes's soul did not constitute, or establish the existence of, an impermissible basis for the sentence grounded upon the judge's religious beliefs, thereby undermining the fundamental fairness of the proceeding. The trial court's statement suggests that its purpose was that Holmes's sentence rehabilitate and incapacitate Holmes, thereby protecting the public from future criminal acts committed by Holmes. This is consistent with the overriding purposes of felony sentencing provided in R.C. 2929.11(A) and demonstrates that the trial court was guided by the overriding purposes and principles of felony sentencing. We conclude that the trial court complied with the applicable provisions of R.C. Chapter 2929 and that its statement did not impair the fundamental fairness of the proceedings.

{¶ 27} Relying on R.C. 2947.051 and *State v. Huertas* (1990), 51 Ohio St.3d 22, 553 N.E.2d 1058, Holmes contends that the trial court erred in imposing its sentence upon her, because the trial court was improperly influenced by a recommendation from the victim's family that the trial court impose the maximum sentence.

{¶ 28} Holmes's reliance on *Huertas* is misplaced. In *Huertas,* the Ohio Supreme Court held that "expressions of opinion by a witness as to the appropriateness of a particular sentence in a capital case violate the defendant's constitutional right to have the sentencing decision made by the jury and judge." Id., 51 Ohio St.3d at 27, 553 N.E.2d 1058. *Huertas* is applicable only to capital cases. See id. This case is not a capital case, and therefore, *Huertas* does not apply.

{¶ 29} R.C. 2947.051(A) provides, "In all criminal cases in which a person is convicted of or pleads guilty to a felony, if the offender, in committing the offense, caused, attempted to cause, threatened to cause, or created a risk of physical harm to the victim of the offense, the court, prior to sentencing the offender, shall order the preparation of a victim impact statement * * *." R.C. 2947.051(B) provides that "[e]ach victim-impact statement prepared under this section shall include any statement made by the victim pursuant to section 2930.13 of the Revised Code." R.C. 2930.13(C)(4) provides that a victim impact statement may include the victim's recommendation for an appropriate sanction or disposition for the defendant for the crime committed.

{¶ 30} Although recommendations for an appropriate sanction for the defendant are expressly provided for in R.C. 2930.13(C)(4), the record in this case does not reflect that the victim's family made a recommendation for the appropriate sanction to be imposed on Holmes. Therefore, we conclude that the record does not portray the error claimed.

{¶ 31} Holmes also contends that the trial court erred in incorrectly informing her that she could be subject to a period of postrelease control up to five years after her release from the Ohio Reformatory for Women.

{¶ 32} Although a sentencing judge is required, pursuant to R.C. 2929.19(B)(3)(c), to notify an offender during sentencing that he or she may receive a period of postrelease control upon release from prison if the judge determines that a prison term is necessary or required, it is at the discretion of the parole board, not the trial court, to determine whether to impose postrelease control. R.C. 2967.28(C). Even though the trial court did incorrectly inform Holmes that she could be subject to a period of postrelease control of up to five years after her release from the Ohio Reformatory for Women, Holmes has not made any plausible claim that she was prejudiced, in the sense that the inaccuracy affected her decision to plead no contest. This is not to say that any erroneous overstatement of the maximum possible punishment for an offense to which a defendant is considering pleading no contest must necessarily always be harmless. If, for example, a defendant is erroneously told that the maximum possible incarceration is 20 years, when the maximum is actually five years, and the prosecutor is offering to recommend a four-year sentence, we can see that a

defendant's decision to accept the plea bargain and plead no contest might be affected by the desire to avoid the illusory possibility of the 20–year sentence, so that the defendant would be prejudiced by the misinformation. In the case before us, by contrast, we see no likelihood that Holmes would have decided not to plead no contest had she been correctly informed that the period of postrelease control to which she might be subject would be three years, not five years.

{¶ 33} Holmes's sole assignment of error is overruled.

## III

{¶ 34} Holmes's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and FREDERICK N. YOUNG, JJ., concur.