OPINION
{¶ 1} Devon D. Edwards pled no contest to having a weapon while under disability, a felony of the third degree, after the Montgomery County Court of Common Pleas overruled his motion to suppress. The court found him guilty and sentenced him to three years of imprisonment. Edwards challenges his conviction and sentence on appeal.
 {¶ 2} The evidence presented at the suppression hearing revealed the following facts:
 {¶ 3} At approximately 1:30 a.m. on November 22, 2003, Dayton Police Officers Daniel Zwiesler and Christopher Malson were dispatched to 519 West Norman Avenue in Dayton, Ohio, on the report of a fight. 519 West Norman is a U-shaped, three-story apartment complex with approximately 45 to 50 total units. The building contains approximately 15 to 16 units per floor. There are two common entrances into the building and interior hallways from which residents enter their apartments. The officers testified that the building is a high drug and high crime location. The Dayton police department has received numerous calls for disturbances, fights, or drugs, and the officers had made numerous previous arrests involving weapons and drugs at this location. Officer Malson indicated that he had "been there on multiple shootings. We've gotten numerous carry concealed weapons, drugs, armed robberies, burglaries, domestic violence. It's a place that even when the fire department, paramedics go to, police are required to escort them to that building."
 {¶ 4} According to Officer Malson, the dispatch indicated that there was a fight involving males on the first floor. As per protocol for this location, the officers arrived simultaneously. After parking their cruisers on Norman Avenue, the officers approached the building from the sidewalk. Two women were standing on the sidewalk, and the officers asked them if they had heard or seen anything. The women answered that they had not. The officers then entered through a door on the left-hand side of the building; the door was propped open.
 {¶ 5} Shortly after entering the hallway, the officers saw Edwards walking toward them from the other end of the hallway. Edwards was wearing a shirt and darkcolored jeans. The officers did not notice any signs that Edwards had been in a fight — he did not appear out of breath, he was not injured, he did not appear to be running away from something, he did not appear to be sweating profusely or agitated. The officers slightly separated into a defensive position.
 {¶ 6} As the officers and Edwards moved toward each other, the officers noticed that Edwards had a large bulge in his right front pants pocket, which caused his pants to sag down on the right side. The officers were concerned that it might be a weapon. The officers instructed Edwards to show his hands, which he did. Officer Zwiesler asked him if he lived in the building. Edwards responded that he did not. Zwiesler then asked if he any identification. Edwards again stated that he did not. The officers then asked him if he had any needles, knives, or guns on him. Edwards again answered no. The officers then advised Edwards that they were going to pat him down for their safety due to the bulge in his pocket. Edwards turned, faced the wall, and placed his hands on the wall. Malson reached for the front pocket, felt the outer layer of Edwards' clothing, and immediately recognized the bulge as a revolver. The weapon was removed and it was found to be a .357-caliber Smith Wesson magnum revolver, a weapon described as being approximately six inches long and weighing eight to nine pounds. Edwards was handcuffed and taken to one of the cruisers.
 {¶ 7} Edwards was charged by complaint with carrying a concealed weapon, and he was subsequently indicted for carrying a concealed weapon and having a weapon while under disability. Edwards filed a motion to suppress, seeking to exclude the gun and any subsequent statements that he made to the police. After hearing the testimony of Officers Malson and Zwiesler, the trial court overruled the motion. The court concluded that the interaction between Edwards and the officers which occurred before he was patted down was consensual and thus did not implicate theFourth Amendment. The court further concluded that the frisk was proper, reasoning:
 {¶ 8} "This is not a case where an officer has a `hunch' or a `sixth sense' that something is wrong. Nor is it a situation where everyone at any time at this particular location is automatically subject to search. Rather, given the nature of the area and this specific location, the call the officers received, the Defendant's description, the Defendant's lack of identification or residence at the apartments, and the suspicious bulge, the officers were constitutionally justified in the minimal invasion involved with a pat-down search. Thereafter, given the officers' testimony and the description of the weapon, its detection and seizure was clearly justified." (Citations omitted).
 {¶ 9} Edwards subsequently pled no contest to having a weapon while under disability. In accordance with the plea agreement, the carrying a concealed weapon charge was dismissed by the state. Edwards was sentenced to three years of imprisonment.
 {¶ 10} Edwards raises two assignments of error on appeal.
 {¶ 11} I. "The trial court erred in denying appellant's motion to suppress evidence gained from him in violation of his constitutional rights."
 {¶ 12} In his first assignment of error, Edwards claims that the trial court erred in overruling his motion to suppress. He asserts that the police did not have sufficient grounds to stop him, because they lacked any reasonable and articulable suspicion that he was engaged in any wrongdoing. Edwards further claims that the officers had no reasonable and articulable suspicion that he was armed to justify the search.
 {¶ 13} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See Statev. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. "But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 14} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under Terry, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot.State v. Martin, Montgomery App. No. 20270, 2004-Ohio-2738, at ¶ 10, citing Terry, supra; State v. Molette, Montgomery App. No. 19694, 2003-Ohio-5965, at ¶ 10. Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones
(1990), 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810, citing Terry,392 U.S. at 27. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v.Heard, Montgomery App. No. 19323, 2003-Ohio-1047, at ¶ 14, quoting Statev. Andrews (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271; see Statev. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489 (setting forth factors to consider in determining whether a reasonable suspicion to make a stop exists). An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. United States v. Mendenhall (1980), 446 U.S. 544, 553,100 S.Ct. 1870, 64 L.Ed.2d 497; Terry, 392 U.S. at 16, 19.
 {¶ 15} Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others. Molette at ¶ 13. To justify a pat-down underTerry, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27; State v. Smith (1978), 56 Ohio St.2d 405,407, 384 N.E.2d 280. Because a frisk under Terry is justified "solely by the protection of the police officer or others nearby, * * * it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." State v. Woodward, Montgomery App. No. 18869, 2002-Ohio-942, quoting Terry, 392 U.S. at 29.
 {¶ 16} Edwards asserts that the officers had no basis to stop him, because they had no reason to suspect that he had been involved in any confrontation, i.e., the basis for the "fight call." Edwards emphasizes that the officers testified that he did not appear out of breath, he was not injured, he did not appear to be running away from something, and he did not appear to be sweating profusely or agitated. Moreover, they acknowledged that Edwards did not run from them and he was fully cooperative. Edwards contends that he was stopped solely because he was present in a high-crime area. In addition, Edwards asserts that the officer had no reasonable suspicion that he was armed; he notes that Officer Malson testified that he did not recognize the bulge as a weapon until he conducted the pat down search.
 {¶ 17} The state responds that the officers were justified in stopping and questioning Edwards because they encountered him without identification at 1:30 a.m. in a building in which he did not live, with a large heavy bulge in his pocket, and where a fight of some sort was said to have taken place. The state further argues that any reasonably prudent person under the circumstances would have suspected that the bulge was a weapon and that his safety was at risk. The state further notes that the officers chose not to pat down the two women whom they encountered outside the apartment building.
 {¶ 18} During the suppression hearing, Officer Malson testified that he had been dispatched regarding a fight between males on the first floor of the apartment building. He and Officer Zwiesler both testified that they entered the first floor of the building from the left side of the "U" and that they encountered Edwards as he turned the corner from the far end of the hallway where one would turn right to go along the back part of the apartment building. Officer Malson testified that upon seeing him, they "were going to stop him to find out if he was one of the individuals involved in our call." Malson further indicated that, upon seeing Edwards, they noticed a large bulge in the front pocket of his jeans which caused one side of his pants to hang lower. Officer Malson testified that he and Officer Zwiesler "immediately were concerned about that due to the area we were in, the time of day in which we were in that apartment building." Although the trial court found that the encounter between the officers and Edwards was consensual until the officers told him that they were going to frisk him for weapons, Officer Malson testified that Edwards was not free to leave during their verbal encounter. Thus, Malson indicated that they had performed an investigatory stop when they questioned Edwards.
 {¶ 19} Considering the totality of the circumstances, we find that the officers had a reasonable and articulable suspicion to justify them stopping and searching Edwards. As noted by the trial court, Edwards was stopped in a building with a very high crime rate, including shootings, felonious assaults, and carrying concealed weapons violations. The officers testified that they had previously responded to numerous such violations at the apartment building and, on this occasion, they again had been dispatched on the report of a fight. Within this context, the officers encountered Edwards with a large bulge in his pocket that caused his pants to hang lower on that side. The fact that Edwards was walking from the reported location of a fight of some sort may have also contributed to the suspicion that he may have been armed, even though he showed no outward signs of having been involving in a physical altercation. Moreover, although Edwards was cooperative in answering the officer's questions, Edwards indicated that he did not live at the apartment and had no identification. Taken together, these facts created a reasonable and articulable suspicion that Edwards may have been unlawfully carrying a concealed weapon in his pants pocket, thus justifying the officers to stop Edwards, to question him, and to conduct a protective search.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} II. "Appellant's sentence was excessive and contrary to law."
 {¶ 22} In his second assignment of error, Edwards claims that his three year sentence was excessive and contrary to law. He states that he had provided mitigating evidence that he had purchased the weapon for protection only. Edwards told the trial court that his involvement in a manslaughter offense in 1996 had resulted in threats from the victim's family and violence during his incarceration for that offense. Edwards further emphasizes that he did not use the weapon in any criminal offense, there was no victim of crime in this case, and there was no indication that he intended or expected to cause physical harm to any person or property.
 {¶ 23} The overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). In furtherance of these goals, the legislature has set forth lists of factors relating to the seriousness of an offense and an offender's likelihood of committing future crimes at R.C. 2929.12(B)-(E). These factors are organized as follows: 1) factors indicating that the offender's conduct is more serious than conduct normally constituting the offense (R.C. 2929.12(B)); 2) factors indicating that the offender's conduct is less serious than conduct normally constituting the offense (R.C. 2929.12(C)); 3) factors indicating that the offender is likely to commit future crimes (R.C.2929.12(D)); and 4) factors indicating that the offender is not likely to commit future crimes (R.C. 2929.12(E)). The trial court is to consider these factors in imposing a sentence, along with any other factors that it finds relevant. "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." State v. Arnett, 88 Ohio St.3d 208, 215,2000-Ohio-302, 724 N.E.2d 793, citing R.C. 2929.12. "A rote recitation by the trial court that it has considered applicable factors under R.C.2929.12 is sufficient for the trial court to satisfy its duty." State v.Holmes, Montgomery App. No. 19975, 2005-Ohio-52, at ¶ 23, citingArnett, supra.
 {¶ 24} For having a weapon while under disability, Edwards was subject to a maximum penalty of five years of imprisonment. In sentencing Edwards to three years of incarceration, the trial court indicated that it was concerned that Edwards had committed the offense approximately 60 days after being released from parole. The court noted that the weapon at issue was stolen and was fully loaded, and that Edwards had denied having the gun when asked by the police. In addition, the court considered Edwards' entire criminal record, which included juvenile convictions, placement in halfway houses, imprisonment, and psychological treatment. Considering all of these circumstances and the fact that the court did not impose the maximum sentence, we cannot agree with Edwards that his sentence was too harsh.
 {¶ 25} The second assignment of error is overruled.
 {¶ 26} The judgment of the trial court will be affirmed.
Fain, J. and Grady, J., concur.