OPINION
Defendant-appellant Miguel Lopez appeals from his conviction and sentence, following a guilty plea, upon the charges of Conspiracy to Commit Aggravated Murder, Conspiracy to Commit Murder, Complicity in Kidnapping, and Complicity in Obstructing Justice, together with a firearm specification for the Conspiracy to Commit Aggravated Murder charge. Lopez argues that the trial court abused its discretion by denying his motion to withdraw his guilty plea prior to sentencing; that the trial court erred by accepting his guilty plea, because it was not voluntary; that he was denied the effective assistance of counsel when his trial attorney failed to file a subsequent motion to withdraw his plea; and that the trial court erred in sentencing him because it failed to put on the record reasons for the sentence.
We conclude that Lopez's guilty plea was voluntary, and that the trial court did not abuse its discretion in denying his motion to withdraw his plea. We further conclude that his trial counsel was not ineffective for having failed to file a subsequent motion to withdraw his plea. However, we agree with Lopez that the trial court erred by failing to put on the record the reasons for the findings it made, pursuant to R.C.2929.14(E), in support of its imposition of consecutive sentences in excess of the maximum sentence for any single offense. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for re-sentencing.
 I
Lopez was charged by indictment with Conspiracy to Commit the Aggravated Murder of Mark Miller in Beavercreek. This count involved a firearm specification. Lopez was also charged by indictment with Conspiracy to Commit the Murder of Lazaro Amezqua. Lopez was further charged by indictment with Complicity in the Kidnapping of Mark Miller. Finally, Lopez was charged by indictment with Complicity in Obstructing Justice, by leaving the scene of the other crimes, and disposing of evidence of those crimes.
Lopez's assigned trial counsel negotiated a plea agreement, whereby Lopez agreed to plead guilty to the charges noted above, and the State agreed to dismiss three other charges pending against him. As part of the plea agreement, Lopez agreed to testify against a co-defendant, Eduardo Bonilla. In exchange, the State agreed to a sentence of 13 years in prison. It was not entirely clear whether this was intended to be an agreed sentence, binding upon the court, or merely a joint recommendation that, if accepted by the trial court, would not be subject to review on appeal, pursuant to 2953.08(D). The trial judge, in accepting Lopez's plea, at one point made the following remark:
 Obviously, a consensus of sentencing would mean that it is a consensus and the Court adopts that as a consensus of sentencing for the 13 years. Is that your understanding?
Whereupon, both counsel answered in the affirmative.
In view of this exchange, we conclude that it was not made clear to Lopez that the "consensus" sentence was not binding upon the trial court. Had Lopez performed his end of the bargain by testifying against Bonilla, we conclude that the trial court would have been bound to impose the 13-year sentence.
In any event, it was made clear to Lopez that the maximum sentence to which he would be exposed as a result of the plea, but for the agreement on the sentence, was 38 years.
After the hearing at which Lopez's plea was tendered and accepted, representatives of the State met with Lopez and his trial counsel to discuss a possible deal in which the agreed time that Lopez would have to serve would be further reduced, in exchange for his additional cooperation with the State. It appears that nothing resulted from this discussion.
After his plea had been accepted, but before sentencing, Lopez decided he did not want to testify against Bonilla. Lopez moved to withdraw his plea. After a hearing, the trial court denied the motion. The trial court imposed concurrent eight-year sentences on the Murder and Kidnapping charges, to be served consecutively with a nine-year sentence in the Aggravated Murder charge. In addition, a consecutive sentence of three years was imposed on the firearm specification, making a total of twenty years. Conspiracy to Commit Aggravated Murder and Conspiracy to Commit Murder are both felonies of the first degree. R.C. 2923.01(J)(1). Kidnapping is also a felony in the first degree. Felonies of the first degree are punishable by a definite prison term of, at most, ten years. R.C. 2929.14(A)(1). Thus, Lopez was sentenced to a total term of incarceration in excess of the maximum term for the single highest-degree offense of which he was convicted.From his conviction and sentence, Lopez appeals.
 II
Lopez's First Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO WITHDRAW HIS PLEAS PRIOR TO SENTENCING.
 The trial court conducted an evidentiary hearing on Lopez's motion to withdraw his plea. Lopez testified in his behalf. He testified that he wanted to withdraw his plea because he was not, in fact, guilty of the offenses to which he had pled guilty, and because he had been led to believe by his attorney that he would only have to serve eight years, as part of the plea bargain.
On cross-examination, Lopez acknowledged that he had said, in open court, at the time of the original plea hearing, that he was guilty of the offenses with which he was charged, after the prosecutor had laid out for him the elements of each offense. Lopez further acknowledged that he had said, at the original plea hearing, that he was admitting his guilt voluntarily. Finally, Lopez acknowledged that the terms of the plea agreement were set forth, in writing, and that, at the original plea hearing, both his attorney at that time and the prosecutor had said, on the record, that with a sentence of thirteen years, Lopez would be eligible for judicial release, at the earliest, after serving eight years.
On this record, the trial court concluded that Lopez had tendered his plea voluntarily, with an understanding of the terms of the bargain. We conclude that there is evidence in the record from which the trial court could make that finding, and that it was, therefore, not an abuse of discretion for the trial court to have denied Lopez's motion to withdraw his plea.
Lopez made another argument to the trial court in support of his motion to withdraw his plea. He argued that he could not be deprived of the benefit of his bargain represented by the 13-year sentence, without also rescinding the entire plea bargain. Although Lopez does not make this argument in support of his appeal, we will nevertheless address it.
In State v. Walton (1981), 2 Ohio App.3d 117, the Court of Appeals for Franklin County reversed a conviction and sentence under similar circumstances. The plea bargain in that case involved a defendant's plea to one charge, the dismissal of other charges, and the trial court's acceptance of a minimum sentence recommendation "if you are called upon to testify and do testify truthfully with regard to your brother's case."Id., at 118. After his plea was accepted, but before sentencing, the defendant decided not to testify against his brother, and moved to withdraw his plea. The court of appeals held that the trial court had abused its discretion by denying the motion to withdraw the plea, while at the same time depriving the defendant of the advantageous sentence. The court of appeals presumed that the dismissal of the counts to which the defendant was not pleading guilty was not entered until the time of sentencing. Id. In the case before us, by contrast, the trial court entered an order accepting Lopez's pleas to certain counts, adjudicating him guilty of those counts, and dismissing the other counts, at the conclusion of the plea hearing, long before the sentencing hearing. Nevertheless, we do not consider this distinction to be significant.
In State v. Walton, supra, at 119, Judge Whiteside, in an opinion concurred in by Judge Robert E. Cook, sitting by assignment, held that:
 It is fundamentally unfair for the trial court to refuse to relieve defendant from his part of the plea bargain but to relieve the state of its obligation. The proper action is to set aside the plea bargain, proceed with trial of all charges, and to impose sentence as to those of which defendant is found guilty.
 Then Judge, now Chief Justice, Moyer dissented. He concluded that:
 [I]t is clear from the record that defendant understood his plea bargain and that he would receive a minimum sentence only if he testified against his brother. The record reflects that defendant's only reason for wishing to withdraw his guilty plea was that he wanted to "take his chances." There is no allegation that would support a finding of manifest injustice.
 State v. Walton, supra, at 120.
We agree with Chief Justice Moyer's reasoning. In the case before us, it was clear that the State's acquiescence in a 13-year sentence was consideration for Lopez's promise to testify against Bonilla. In laying out the terms of the plea bargain for the record, the prosecutor made the following statement:
 The State indicates that a plea agreement has been reached whereby the State of Ohio is agreeing to dismiss in this indictment Count 1, Count 3 and Count 5 in consideration of the plea. The State is indicating that the Defendant would plead as charged, that is guilty to Count 2, Count 4 and Count 6 and Count 7.
 Further, in consideration of the plea this Defendant will agree to speak to prosecutors and law enforcement officers in charge of this case regarding testifying truthfully in any subsequent proceedings or trial that would arise out of this matter, involving any other Defendant or accomplice and will discuss with us any information about this case and any unknown persons who were involved. In consideration of what I have just indicated, the State of Ohio would recommend that the Defendant would receive, upon complying with each of the things that the State has indicated herein, a 13 year prison term as the appropriate sentencing alternative in this case.
(Emphasis added.)
In our view, the emphasized portion of the record quoted above made it clear that the State's agreement to the 13-year sentence was specifically tied to Lopez's promise to cooperate in prosecutions against others. Corroborating this is the testimony of Beavercreek Police Detective David Potts, at the hearing on Lopez's motion to withdraw his plea:
 Q. Were you aware of any plea agreement that was struck between the State and the Defendant regarding his testimony against other Defendants?
A. Yes, sir.
Q. And what was that agreement?
 A. That he would testify in any of the upcoming trials in exchange for the recommendation for a 13 year sentence.
 Later, there was a meeting with Lopez, Potts, Lopez's attorney, the prosecutor, and another police officer, a Detective Combs, in the prosecutor's office. When it became apparent that Lopez was not going to testify against Bonilla, the following exchange occurred, according to Potts:
 Detective Combs explained to Mr. Lopez that the 13 year recommendation was based upon his cooperation and if we didn't get that he was facing a potential of 38 years. He said: "The judge is probably going to give it to me anyway. Go ahead and do it." And the meeting was concluded.
 From this record, we conclude that Lopez understood that the 13-year sentence was tied to his agreement to cooperate with other criminal investigations and prosecutions. Thus, after Lopez's plea was accepted and the other charges were dismissed, but before sentencing, the parties were in the position of having each agreed to multiple undertakings, some of which had been performed, and others of which were executory. Lopez had performed his undertaking to plead guilty to four counts, but had not yet performed his undertaking to cooperate with other criminal prosecutions; the State had performed its obligation to dismiss three counts, but had not yet performed its undertaking with respect to Lopez's sentence. While the agreement was in this partially executed posture, Lopez, but not the State, refused to perform further. In this setting, we conclude that Lopez was not entitled to demand the rescission of the plea bargain to which he agreed. In view of the fact that the parties' unperformed promises of the parties were clearly tied together, we conclude that it was not inequitable to relieve the State, as the party aggrieved by Lopez's refusal to perform his end of the bargain, of its promise with respect to sentencing, without rescinding those aspects of the bargain that had already been performed.
A party to a contract who has voluntarily and without excuse refused to perform cannot treat the contract as rescinded for default of the other party subsequently occurring. Ashbrook v. Hite (1859), 9 Ohio St. 358. That is precisely the case herein. Lopez, voluntarily and without excuse refused to perform his promise to cooperate with respect to other prosecutions. Subsequently, the State declined to honor its promise with respect to sentencing. That does not entitle Lopez to rescission of the bargain.
We note, in passing, that in State v. Walton, supra, the defendant, who had been promised a minimum sentence in exchange for testifying against his brother, was given a maximum sentence when he failed to carry out his promise. In the case before us, Lopez had been promised a sentence of thirteen years in exchange for his promise to cooperate with respect to other prosecutions. When Lopez defaulted on his promise, he was sentenced to 20 years, well short of the maximum of 38 years to which he could have been sentenced.
Lopez's First Assignment of Error is overruled.
 III
Lopez's Second Assignment of Error is as follows:
 THE COURT ABUSED ITS DISCRETION WHEN IT FAILED TO RULE ON APPELLANT'S RENEWED MOTION TO VACATE HIS PLEAS PRIOR TO SENTENCING.
 Following the denial of Lopez's motion to withdraw his plea, the matter was set for disposition on November 15, 1999. At that time, his counsel again expressed Lopez's desire to withdraw his plea. Besides reiterating that his client had not understood the original plea bargain, Lopez's counsel contended that Lopez had not been at fault in having failed to comply with his obligation, pursuant to the plea bargain, to testify against Bonilla. The trial court set the matter over for hearing the following week. Following this hearing, Lopez's counsel renewed his motion to withdraw his plea. There was also discussion concerning the effect of Lopez's failure to have testified against Bonilla.
The trial court did not expressly rule upon the renewal of Lopez's motion to withdraw his plea, but, by implication, denied the motion. The trial court found that Lopez had agreed to testify against Bonilla, and that Lopez had failed to do so. The trial court concluded that because Lopez had breached his agreement to testify against Bonilla, the State was relieved of its agreement to a thirteen-year sentence.
The trial court had previously addressed Lopez's argument that his original plea was not knowing and voluntary. Lopez's attorney made no new arguments in support of the renewed motion to withdraw the plea. Therefore, we conclude that the trial court did not abuse its discretion by failing to grant the renewed motion to withdraw the plea.Lopez's Second Assignment of Error is overruled.
 IV
Lopez's Third Assignment of Error is as follows:
 APPELLANT'S PLEA WAS NOT VOLUNTARY AS THE STATE CONTINUED TO NEGOTIATE A BETTER OFFER EVEN AFTER THE PLEA AGREEMENT WAS PUT ON THE RECORD.
 The record reflects that after Lopez's negotiated plea of guilty was tendered and accepted in open court, the State continued to discuss with Lopez the possibility that it would agree to an even more advantageous sentence in exchange for Lopez's cooperation with respect to other matters. In our view, this did not invalidate the plea bargain that had already been agreed to. The State was willing to be bound by the agreement that it had made, but expressed a willingness to extend additional consideration to Lopez, in exchange for additional consideration from him, in the form of additional cooperation. Parties to a binding contract may discuss a modification of the contract, or even a possible novation, without invalidating the contract to which they have already agreed. Furthermore, we do not understand how Lopez claims to have been prejudiced by the State's willingness to consider making further sentencing concessions in exchange for his additional cooperation.
Lopez's Third Assignment of Error is overruled.
 V
Lopez's Fourth Assignment of Error is as follows:
 APPELLANT'S WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE FIRST TRIAL ATTORNEY FAILED TO FILE A MOTION TO WITHDRAW APPELLANT'S PLEA.
 Lopez contends that his original trial counsel was ineffective for having failed to move to withdraw his plea. His subsequent trial counsel did file a motion to withdraw his plea, prior to sentencing. This motion came on for an evidentiary hearing. The trial court appears to have given the motion full consideration. Consequently, we cannot understand how Lopez could be deemed to have been prejudiced by his original trial counsel's failure to have filed a motion to withdraw his guilty plea. Lopez received effective representation from his subsequent trial counsel, David Miles, an able and experienced attorney. Lopez's original trial counsel, who had negotiated the plea bargain, may have had legitimate ethical concerns about filing a motion to withdraw the plea, based upon Lopez's alleged failure to have understood the terms of the bargain. For all we know, Lopez's original trial counsel may have had direct knowledge that any allegation along these lines would have been untrue.
Lopez's Fourth Assignment of Error is overruled.
 VI
Lopez's Fifth Assignment of Error is as follows:
 THE SENTENCING OF DEFENDANT WAS IMPROPER BECAUSE THE COURT IS REQUIRED TO GIVE REASONS FOR THE SENTENCE WHEN IT HAS HANDED DOWN CONSECUTIVE SENTENCES FOR A COMBINATION OF SENTENCES EQUAL TO THE MAXIMUM FOR THE MOST SERIOUS OFFENSES.
 Before imposing sentence, the trial court made the following findings:
 Pursuant to 2929.14(E) the Court finds that for the reasons stated on the record, that consecutive sentences are necessary to protect the public from future crime or to punish the defendant and is not disproportionate to the seriousness of the Defendant's conduct and the danger the Defendant poses to the public and that the harm caused by the Defendant was so great or unusual that no single prison term for any of the offenses committed as part of the single course of conduct adequately reflects the seriousness of the Defendant's conduct.
 The Court further finds that pursuant to R.C. 2929.14(B), that the shortest prison term would demean the seriousness of the Defendant's conduct, and the shortest term would not adequately protect the public from future harm by the Defendant or others.
 The Court further finds that for the reasons stated on the record the Defendant has committed the worst form of the offense.
 The above-quoted findings are the findings prescribed by R.C. 2929.14(C) and (E)(4).[1] The trial court recited these findings in the words of the statute.
Whenever a trial court imposes consecutive sentences that, in the aggregate, equals or exceeds the maximum sentence that could be imposed for the single offense of the highest degree of which the defendant is convicted, it must set forth its reasons for imposing the maximum prison term. R.C. 2929.19(B)(2)(e).
Lopez concedes that the trial court made the requisite statutory findings, but argues that the trial court failed to put on the record its reasons for those findings. The State argues that the trial court is not required to do more than make the findings required by the statute, in the words of the statute.
We conclude that the trial court is required to put on the record its reasons for the findings required by the statute whenever it imposes a sentence that equals or exceeds the maximum sentence for the offense of the highest degree of which the defendant has been convicted, pursuant to R.C. 2929.19(B)(2)(e).
In State v. Edmondson (1999), 86 Ohio St.3d 324, at 329, the Ohio Supreme Court remanded the cause for re-sentencing because the trial court had not complied with R.C. 2929.19(B)(2)(d).[2] As the State notes, in Edmondson, supra, the trial court had not even rendered the findings required by statute, let alone the reasons for its findings. Nevertheless, the holding in State v. Edmondson, supra, is characterized in State v. Arnett (2000), 88 Ohio St.3d 208, at 217, as follows:
 * * * some statutes require the sentencing judge to state both the findings and the reasons for those findings on the record. See State v. Edmondson
(1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131, 134 * * *.
(Emphasis in original.)
Based on the characterization, in State v. Arnett, supra, of the holding in State v. Edmondson, supra, we conclude that a trial court must put on the record its reasons for making the requisite statutory findings whenever it imposes a sentence, pursuant to R.C. 2929.19(B)(2) (e), that equals or exceeds the maximum sentence that could have been imposed for the offense of the highest degree of which the defendant is convicted.
Lopez's Fifth Assignment of Error is sustained.
 VII
Lopez's Fifth Assignment of Error having been sustained, and his other assignments of error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for re-sentencing.
YOUNG, J., concurs.
[1] R.C. 2929.14(C) applies where a defendant is sentenced to the maximum possible prison term for an offense. It has no application in this case, because Lopez did not get the maximum possible sentence for any of the offenses of which he was convicted. R.C. 2929.14(E)(4), which governs the imposition of consecutive sentences, does apply in this case.
[2] This subdivision of the statute deals with the imposition of a maximum sentence for a single offense. Like R.C. 2929.19(B)(2)(e), dealing with the imposition of sentences for multiple offenses "that is the maximum prison term allowed for the offense of the highest degree," subdivision (B)(2)(d) requires a finding of the trial court's "reasons for imposing the maximum prison term." The two subdivisions, while covering different situations, are identical in expressing this requirement.