OPINION
In this case, Stephen Quinn appeals from his conviction and sentence on charges of rape, kidnapping, and felonious assault. After pleading guilty to these charges, Quinn received maximum sentences of ten years on the rape and kidnapping charges, and the maximum sentence of eight years for felonious assault, with all sentences to be served consecutively. Therefore, Quinn was sentenced to a total of 28 years. He was also designated a sexual predator.
On appeal, Quinn raises the following assignments of error:
 I. The Appellant was not given the benefit of a full hearing on his classification as a sexual predator pursuant to ORC Sec. 2950.09.
 II. The trial court improperly concluded during sentencing that there was a relationship between the victim and defendant pursuant to ORC Sec. 2929.12(B)(6) when there was no evidence in the record of such a relationship.
Upon consideration of the record and applicable law, we find no merit in the assignments of error. Accordingly, we will affirm the trial court judgment.
 I
The charges against Quinn arose from the events of January 31, 2001, when Quinn abducted a fellow employee at Wayne Hospital Rehabilitation Center. Quinn initially held a knife to the victim's throat and forced her into a conference room. When the victim resisted, Quinn hit her in the face and kicked her in the stomach. He then forced her into a truck and drove around for several hours. During that time, he physically assaulted her again and raped her. Eventually, Quinn brought the victim back to the hospital for emergency treatment, after she convinced him that she was not going to say anything to the police. Once the victim got into emergency treatment, she informed hospital personnel of the truth. Quinn was then arrested and was charged with rape. Subsequently, he was indicted on four counts of rape, one count of kidnapping, and one count of felonious assault, all with sexually violent predator specifications.
Quinn pled not guilty by reason of insanity, and competency evaluations were ordered. However, upon considering the reports, the trial court found that Quinn was competent to stand trial and was also not insane at the time of the offenses. Before the court ruled on the competency issue, the State moved to amend the indictment to delete the sexually violent predator specifications, because Quinn had not previously been convicted of, nor had he pled guilty to a sexually violent offense.
After the court's decision on competency, Quinn and the State entered into a plea agreement, pursuant to which Quinn pled guilty to one count of rape, with no specification; one count of kidnapping, with a sexual motivation specification; and one count of felonious assault, also with a sexual motivation specification. In exchange, the State agreed to move the court to dismiss three counts of rape. The State further agreed to recommend a nine year term on the rape and kidnapping charges, and seven years for felonious assault, for a 25 year total sentence.
Following a pre-sentence investigation, the trial court held a combined sentencing and sexual predator classification hearing. After considering the pre-sentence investigation report, the materials submitted by Quinn, and a victim statement, the court found that Quinn was a sexual predator. Further, the court sentenced Quinn to the maximum sentences on all charges, to be served consecutively, for a total of 28 years in prison.
As we indicated, Quinn alleges in the first assignment of error that the trial court failed to give him the full benefit of a hearing, as required by R.C. 2950.09. According to Quinn, only a "terse colloquy" between court and counsel occurred, and no evidence was presented to establish the need for a sexual predator classification.
We have considered the statutory requirements for a sex offender classification hearing on a number of occasions. In State v. Marshall
(Nov. 16, 2001), Montgomery App. No. 18587, 2001 WL 1468893, we held that trial courts must comply with the model procedures set out in State v.Eppinger (2001), 91 Ohio St.3d 158. Marshall, 2001 WL 1468893, *3-4. See, also, State v. Lopez, Montgomery App. No. 18646, 2001-Ohio-6997.
The purpose of these procedures is to create a record for review. 2001 WL 1468893, *2. On reviewing the record in the present case, we find that the trial court sufficiently complied with procedural requirements. In the first place, when Quinn pled guilty, the written guilty plea he signed stated that:
 "I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice and competence. I am not under the influence of drugs or alcohol. No threats have been made to me. No promises have been made except as part of this plea agreement stated entirely as follows:
 "The State will move the Court to dismiss Counts 2, 3, and 4 of the indictment. At sentencing, the State will recommend that a term of imprisonment of 9 years be imposed on each, Counts 1 and 5, and an additional term of imprisonment of 7 years be imposed upon Count 6, all to be served consecutively, for a total prison term of 25 years. The Defendant is free to argue for any sentence he deems appropriate. The Defendant will be adjudicated to be a sexual predator as defined in section 2950.01 of the Ohio Revised Code.
 "I ACKNOWLEDGE THAT ANY RECOMMENDATIONS BY THE ATTORNEYS IN THIS MATTER ARE NOT BINDING UPON THE COURT AND THAT THE JUDGE HAS FULL DISCRETION TO PRONOUNCE SUCH SENTENCE AS THE JUDGE MAY DETERMINE TO BE APPROPRIATE."
We have previously noted that a defendant's acknowledgment that he is a sexual predator seems to be "the best evidence that the State could present to the court to that effect." State v. Bittner (May 11, 2001), Montgomery App. No. 18607, 2001 WL 501926, *2. Other districts also let defendants stipulate to their status. See, e.g., State v. Carnail (Nov. 8, 2001), Cuyahoga App. No. 78921, 2001 WL 1382870, *1, and State v.Rogers, Columbiana App. No. 01 CO 5, 2002-Ohio-1150, ¶ 22.
Accordingly, in the present case, the trial judge did not have to hold a hearing. Nonetheless, the judge did not simply accept Quinn's statement in the plea agreement. First, the judge asked both attorneys if they wished to speak to the issue. However, they declined to do so. The judge then indicated that he had reviewed the pre-sentence investigation report, which included prior criminal history, and found clear and convincing evidence that Quinn was a sexual predator. After reviewing the record, including the pre-sentence investigation report, we agree.
Clear and convincing evidence is "`that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"Lopez, 2001 WL 1597974, *3, quoting from Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
The facts of this particular crime were very distasteful. As we previously mentioned, Quinn attacked a fellow employee at work, where most individuals would feel reasonably safe from assault. He beat her up when she did not comply with his wishes, and then forced her to ride around for several hours in terror, not knowing if she would live or die. He then physically and sexually assaulted her before returning her to the workplace. Furthermore, this was not Quinn's first sexually-oriented offense. Specifically, Quinn was previously convicted of four counts of gross sexual imposition (reduced from rape) in 1990. At that time, he served about 19 months in the Ohio Correctional Institution and received sexual offender education, apparently to no effect.
The record does contain a good deal of evidence about Quinn's mental problems, which included a discharge from the Marines for inability to adapt in 1988, voluntary and involuntary hospitalizations for suicide attempts, major depressions, and/or hallucinations in 1989, 1990, 1998, and 2001 (while in jail on the present charges). However, Quinn was found competent to stand trial and was also found not to be insane at the time of the offenses. At the hearing, when Quinn's attorney discussed sentencing, he commented in mitigation that Quinn had a substantial, chronic, and real mental illness, and that the "unfortunate reality" of the illness was that Quinn did not act in conformity with what society expects of members in good standing. This may be true. At the same time, the fact that Quinn cannot control his behavior indicates that he is likely to re-offend. See R.C. 2950.09(B)(3)(g) (one factor courts consider in determining likelihood of re-offense is "[a]ny mental illness or mental disability of the offender or delinquent child").
In light of the above discussion, we find no error in the trial court's handling of the sexual predator classification hearing. Accordingly, the first assignment of error is without merit and is overruled.
 II
In the second assignment of error, Quinn contends that the trial court improperly concluded during sentencing that he and the victim had a relationship pursuant to R.C. 2929.12(B)(6), when the record did not reveal evidence of a relationship. R.C. 2929.12(B) requires sentencing courts to consider various factors relating to the seriousness of a defendant's conduct. One factor courts are to evaluate in deciding if the defendant's conduct is more serious than conduct normally constituting an offense is whether "the offender's relationship with the victim facilitated the offense." R.C. 2929.16(B)(6).
Concerning this factor, the trial court noted at sentencing that a relationship existed between the victim and defendant, to the extent that they worked in the same environment. The court noted that this fact may have facilitated Quinn's identification of the victim, and that, at a minimum, she was not a random victim picked from the population at large.
Quinn contends that the court's reliance on this factor was an abuse of discretion, because the record is allegedly devoid of evidence that he and the victim even knew each other. However, we disagree. For one thing, the record does contain evidence that Quinn and the victim were acquainted. Specifically, a preliminary hearing was held on February 5, 2001, and a transcript of the hearing was filed on February 14, 2001. Quinn did not attend the hearing, but the victim did testify. Her testimony reveals that she and Quinn were acquainted. On the evening of the crime, the victim stayed after work to exercise on the equipment. She also treated herself for seven to ten minutes with an ultrasound machine, because she had a prior injury from work. During the time she used the ultrasound machine, Quinn stood and talked to her. According to the victim: "[t]he whole time I was treating myself, he was talking to me. And I thought he was just being friendly. He kind of knows some information about myself, and I just didn't think anything bad about it."
At the time, Quinn was a new employee to the department, but the victim had seen him several times. After the victim finished the ultrasound, she changed into her work clothes. She then walked through the back hallway and heard Quinn behind her saying good night. She also said "good night" and even said, "Don't work too hard." It was then that the victim felt Quinn grab her from behind and pull her into a conference room, where the initial assault occurred.
Although the sentencing judge was not the judge who presided at the preliminary hearing, the above evidence was part of the record and was available. An individual decision-maker has "discretion to determine the weight to assign a particular statutory factor." State v. Arnett,88 Ohio St.3d 208, 215, 2000-Ohio-302. Therefore, the trial judge was free to give any weight he chose to the relationship.
The transcript of the sentencing hearing clearly reveals that the trial judge placed little weight on this factor. In fact, the only comment the judge made was that some relationship existed, if only to the extent that the victim was not a random choice. This is a factually correct statement. Moreover, as we mentioned before, people should be able to feel safe when they are in their workplace.
Instead of relying heavily on the "relationship" factor, the court focused on the extensive physical injuries, significant psychological harm, and severe economic harm that Quinn caused the victim. As the court observed, "[t]hose are incalculable." The record contains ample evidence to that effect. In the sentencing entry, the court noted that the victim had been repeatedly and brutally beaten over many parts of her body during the duration of the offenses, which caused her serious temporary and permanent physical injury, that her psychological injuries were grave, and that she had been unable to work in her well-paying profession for the past year. These facts are supported by the victim impact statement and the pre-sentence investigation report.
"Serious physical, psychological, or economic harm as a result of the offense" is an appropriate factor for the court to consider in deciding if the defendant's conduct is more serious than conduct normally constituting the offense. See R.C. 2929.12(B)(2).
Accordingly, because the record clearly and convincingly supports the sentencing court's finding that consecutive and maximum sentences were warranted, the second assignment of error is overruled. State v. Culp
(May 25, 2001), Champaign App. No. 2000-CA-17, 2001 WL 561288, *5.
Based on the preceding discussion, both assignments of error are overruled and the judgment of the trial court is affirmed.
FAIN, J., and GRADY, J. concur.