OPINION
Defendant Uriah Cosgrove appeals the March 15, 2000 judgment of Auglaize County Court of Common Pleas, and asserts a single assignment of error with the trial court's judgment.
 THE TRIAL COURT'S IMPOSITION OF MAXIMUM SENTENCES IS NOT SUPPORTED BY THE RECORD.
On February 17, 2000, defendant pled guilty to one count of burglary and one court of theft, felonies of the second and fifth degree, respectively. Following a pre-sentence investigation, the trial court sentenced the defendant to consecutive maximum terms for both crimes. On appeal, the defendant correctly concedes that the trial court considered the statutory factors as required by R.C. 2929.12 and made the findings required for the imposition of maximum sentences required by R.C.2929.14(C) and did so on the record at the sentencing hearing as required by R.C. 2929.19. See generally State v. Martin (1999),136 Ohio App.3d 355; Cf. new R.C. 2953.08(G)(1). Accordingly, defendant's sole claim on appeal is that the trial court's findings were clearly and convincingly unsupported in the record or otherwise contrary to law. See former R.C. 2953.08(G)(1)(a), quoted and discussed inMartin, 136 Ohio App.3d at 359-60. See also State v. Russell (Sept. 27, 2000), Auglaize App. No. 2-2000-22, unreported, 2000 WL 1420272 at **5-6 (noting that it is the defendant's burden in challenging a sentence to show that "clear and convincing evidence in the record establishes that the trial court's factual determinations were in error"). With this standard in mind, we will review the findings of the trial court as they relate to the facts of this case.
The circumstances of the crime at issue and the defendant's role in the crime are essentially undisputed. On December 9, the defendant accompanied two acquaintances, Justin Kohler and Steven Pack, to the residence of Alfred Heinrich in Wapokoneta, Ohio in Pack's car. The defendant had previously informed Pack and Kohler that he knew Mr. Heinrich because his (the defendant's) father worked at Mr. Heinrich's residence, and he was aware that because Mr. Heinrich was elderly and had recently moved into an assisted living center that he was not residing in the house at the time. While the defendant waited outside the Heinrich residence, Pack kicked the door open and entered the residence along with Kohler and took coins and jewelry that was later sold to a local pawnshop for approximately seven hundred dollars. The defendant received approximately two hundred dollars from the sale of the stolen items.
On December 20, the defendant was interviewed by the Auglaize county Sheriff's Department and admitted his role in the crime. He also stated that he was aware that Pack and Kohler had been involved in three other burglaries, including one in which the victim, 82-year-old Margaret Kill, was present at the time of the break-in and was assaulted by Pack and Kohler. The defendant also admitted that he had at one point worked for a neighbor of Mrs. Kill. In a subsequent interview, the defendant admitted that he had told Pack and Kohler about Mrs. Kill's residence and that prior to the break-in had in fact "scoped out" the residence with Pack and Kohler. Finally, the defendant also admitted he had informed Pack and Kohler about the residence of 88-year-old Margaret Emerick. The defendant was aware of Ms. Emerick's residence because he had previously done yard work and shoveled snow for her, and had in fact appeared in a local newspaper for doing so. At any rate, defendant stated that he accompanied Kohler and Pack to Ms. Emerick's house on one occasion and that Kohler and Pack had tried to break in to the house but were unable to do so. Kohler and Pack apparently broke into the Emerick residence on a different occasion without the defendant, and the defendant subsequently admitted to the Auglaize County Sheriff's Department that he had himself taken small amounts of money from Ms. Emerick's home on three occasions when she had invited him into the house. It is undisputed that during the time of the break-ins to the Heinrich, Kill and Emerick residences, the defendant was on bond from the Auglaize County Common Pleas Court for possession of a firearm on school property — in September of 1999, the defendant was arrested when he attempted to retrieve his shotgun from the trunk of his girlfriend's car (which was parked on school property) so he could go squirrel hunting.
On February 17, 2000, the defendant pled guilty to one second degree felony count of burglary in violation of R.C. 2911.12(A)(2) and one fifth degree felony count of theft in violation of R.C. 2913.02(A)(1) arising from his involvement in the break-in at the Heinrich residence. In a written plea agreement signed by the defendant, the State announced its intent to recommend that the defendant be incarcerated for eight years for the burglary and one year for the theft, but agreed "not to seek any further indictment on additional Emmerick [sic] burglarys [sic] or thefts occurring on or before 1-11-2000." The agreement also provided that "[the] State will not file formal opposition to [a] motion for judicial release."
Prior to entering his plea, and prior to any plea offer having been made by the State, the defendant provided substantial assistance to the Auglaize County authorities in their attempts to gather evidence against and prosecute Justin Kohler and Steven Pack. Specifically, the defendant collected tape recordings incriminating his co-defendants, testified before the Auglaize County Grand Jury regarding the offenses, and testified for the State at Stephen Pack's trial.
After considering all of this evidence at the defendant's sentencing hearing, the trial court chose to impose maximum sentences for both burglary and theft upon the defendant. R.C. 2929.14(C) provides:
 Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
 Id. (emphasis added). In this case, the trial court justified its decision to impose maximum sentences by finding both that the defendant had committed the "worst form of the offense" and that the defendant had the "greatest likelihood of committing future crimes." This court has repeatedly held that "when addressing the seriousness of an offense or the defendant's likelihood of recidivism, trial courts are to use the statutory factors enumerated in R.C. 2929.12." State v. Jones (June 29, 2000), Mercer App. No. 10-2000-05, unreported, 2000 WL 924810 at *3, citing State v. Martin (1999), 136 Ohio App.3d 355. The defendant does not argue that the trial court failed to make the findings required by R.C. 2929.14(C) or to consider the factors mandated by R.C. 2929.12; instead, he contends that the trial court's decision weighing the R.C. 2929.12 factors was erroneous, and that the trial court's subsequent findings that he had committed "the worst form of the offense" and had the "greatest likelihood of recidivism" are clearly and convincingly unsupported in the record. See R.C. 2953.08(G), construed in Martin, 136 Ohio App.3d at 359-61. Cf. State v. Newport (Feb. 2, 2000), Auglaize App. No. 2-99-28, unreported, 2000 WL 123790 at *4 (defendant failed to establish that trial court's findings were clearly and convincingly unsupported in the record). We will review each of defendant's contentions separately.
At defendant's sentencing hearing, the trial court noted the following specific factors relating to the seriousness of the defendant's offenses:
 The Court finds that the injuries suffered by the victim was exacerbate by the physical and mental condition and age of the victim, Mr. Heinrich being elderly. There was some significant damage. I won't go so far as to say the victim suffered serious economic harm. There was some significant dollar amounts involved [sic]. They got most of that back in terms of the things that were taken out of the Heinrich residence. There was some damage involved in the Heinrich residence. I won't go so far as to call it serious under the statute.
 The relationship with the victim did facilitate the offense. The Defendant had familiarity with the family and the place. The activity of these individuals rises to the level of being organized. The Court finds the Defendant did commit the offense as a part of it, as organized crime activity.
 The victim did not induce or facilitate the offense. The Defendant did not act under strong provocation. The Defendant would have expected to cause physical harm to property. There are no substantial grounds to mitigate the conduct of the offender and the offender's conduct is more serious than conduct normally constituting the offense.
 See Transcript, at *42; R.C. 2929.12(B) (C). The court also observed that "this was planned with others under circumstances that make it not spur of the moment, not some kid seeing a neighbor and taking advantage of an opportunity that presents itself but instead planning it in advance, and some pretty advanced planning." Transcript, at *44. Based upon its weighing of all these factors, the trial court subsequently concluded that defendant had "committed one of the worst forms of the offense[s]" of burglary and theft. Id. at *45.
Reviewing these decisions in light of the facts of the case, we must conclude that the trial court misapplied at least one of the aggravating factors found in R.C. 2929.12(B). Cf. State v. McLemore (2000),136 Ohio App.3d 550, 553 (trial court misapplied statutory factor relating to likelihood of recidivism). Specifically, the record reveals no factual basis for the trial court's conclusion that "the physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the * * * age of the victim." R.C. 2929.12(B)(1) (emphasis added). Clearly the victim in this case, Mr. Heinrich, was an elderly man, and the record contains ample support for the contention that all three victims may have been targeted because of their ages. However, the record contains no evidence that Mr. Heinrich suffered any greater injury as a result of his age. Mr. Heinrich was not present when the offense occurred, his victim impact statement makes no mention of his advanced age, and apart from the trial court's announcement of the presence of the statutory factor no mention of the victim's age appears in the sentencing hearing transcript. Cf.State v. Arnett (2000), 88 Ohio St.3d 208, 214 (affirming sentence where trial judge found presence of R.C. 2929.12(B)(1) factor and where "[t]he testimony at the sentencing hearing amply informed the judge that [the defendant's] principle victim suffered exacerbated harm due to her [age]").
Moreover, we are not persuaded that the trial court's conclusions that "the offender's conduct is more serious than conduct normally constituting the offense" (R.C. 2929.12(B)) and that "there are no substantial grounds to mitigate the conduct of the offender" accurately reflect the defendant's conduct in this case. It is undisputed that Mr. Heinrich's house was targeted for a burglary specifically because the defendant was aware Mr. Heinrich had moved to an assisted living facility and no longer resided there. While the defendant apparently accepts that the statutory elements of burglary were satisfied in this case, see R.C.2911.12(A)(2), we cannot overlook the fact that evidence that "any person other than an accomplice of the offender [was] likely to be present" was slim. Moreover, the defendant was guilty as an aider and abettor, because it is apparently undisputed that he did not actually trespass into the house himself but acted as a lookout. While these facts do not preclude the trial court's finding of defendant's guilt on the offenses to which he pled, they might have been appropriate mitigating factors for that court to consider at sentencing, see R.C. 2929.12(C), and in any event they would not seem to constitute a worst form of the offense, especially when compared to the Kill burglary described earlier.
Based on all the foregoing, we plainly have significant reservations about the trial court's finding that the defendant had committed the "worst form of the offense." However, the trial court also retained the authority to sentence the defendant to maximum sentences because it found that the defendant had the greatest likelihood of recidivism. See R.C. 2929.14(C). In relation to the defendant's likelihood of recidivism, the trial court found that several aggravating factors were present:
 The Defendant was under bond from Case 99-C112 at the time of committing the offense in 2000-CR-05.
 The Defendant was previously adjudicated a delinquent on more than one occasion. The Defendant has not been rehabilitated to satisfactory degree after previously being adjudicated a [delinquent] child.
 The Defendant claims remorse for his actions. He demonstrates some, but in light of all the history of having helped these old people to the extent of receiving significant publicity for his help for these old people and turning right around and helping set `em up to victimize `em [sic], being out on bond [despite] having been in trouble so many times in the past, having previous opportunities for various forms of probation and parole as a juvenile, being out on bond from this Court in the shotgun incident involving M. Kohler, indirectly at least, and then turning around with his subsequent activity involved in this case, the Court does not accept his remorse as genuine.
 The Defendant does not have a clean juvenile record. This is his first adult offense. Actually, these two (2) cases [the firearm case and the Heinrich burglary] are his first adult convictions. He has not led a law abiding life for a significant number of years prior thereto [sic], and the Court cannot say that the offense was committed under circumstances likely to recur. It appears that the circumstances of the Defendant's life and background show that committing future criminal acts are likely to recur [sic] and the likely to re-offend factors outweigh those opposed to re-offend.
 See R.C. 2929.12(D) and (E). Based upon all the foregoing and also upon its finding that the offense was planned along with others, the trial court found that the defendant "posed the greatest likelihood of committing crimes." Reviewing the evidence in light of these judgments, we cannot say that the trial court's finding that the defendant poses the greatest likelihood of recidivism is clearly and convincingly unsupported in the record. By contrast, the record contains evidence that clearly and convincingly supports the trial court's judgment on this issue. The defendant has a long history of juvenile offenses and has had many opportunities for rehabilitation, but his offenses grew more and more serious as the defendant got older, culminating in the instant offense.
In sum, while we have expressed significant reservations about the trial court's judgment that the defendant committed a "worst form of the offense" in this case, it unnecessary to address this issue further because the court's addition and independent judgment that the defendant posed "the greatest likelihood of committing [future] crimes" is clearly supported in the record. We must reiterate that 2929.14(C) permits a trial court to sentence a defendant who "poses the greatest likelihood of committing future crimes" to a maximum sentence. For that reason, and because even under the modern sentencing scheme a trial court that complies with the sentencing statutes and makes findings appropriately supported in the record "has discretion to determine the most effective way to comply with the purposes and principles of sentencing," see R.C.2929.12(A), we cannot say that the defendant has met his burden to clearly and convincingly establish that the record does not support his sentence or is otherwise contrary to law. Cf. R.C. 2953.08(G)(2). For these reasons, we overrule the defendant's sole assignment of error, and affirm the judgment of the Auglaize County Court of Common Pleas.
 _______________ SHAW, J.
 BRYANT, J., concurs, WALTERS, P.J., concurs in judgment only.