[Cite as *State v. Salim*, 2014-Ohio-3602.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 14 CAA 01 0005 |
| ALI  SALIM | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                 Pleas, Case No.  13 CR I 02 0069


JUDGMENT:                        Affirmed


DATE OF JUDGMENT ENTRY:          August 21, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CAROL HAMILTON O'BRIEN                    SAMUEL H. SHAMANSKY
PROSECUTING ATTORNEY                      DONALD L. REGENSBURGER
KYLE E. ROHRER                            COLIN E. PETERS
DOUGLAS N. DUMOLT                         KRYSTIN N. MARTIN
ASSISTANT PROSECUTORS                     523 South Third Street
Hayes Building                            Columbus, Ohio  43215
140 North Sandusky Street
Delaware, Ohio  43015

*Wise, J.*

**{¶1}** Defendant-Appellant Ali Salim appeals his sentence entered in the Delaware County Common Pleas Court following pleas of guilty to two counts of Involuntary Manslaughter, one count of Rape, one count of Abuse of a Corpse, and one count of Tampering with Evidence.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant, undisputed facts are as follows:

**{¶4}** Defendant-Appellant Ali Salim was a licensed and practicing medical doctor and board certified psychiatrist. At the time the events in this case occurred, he was employed as an emergency room physician at Knox Community Hospital and performed emergency room work on a contract basis around Ohio when the events of this case occurred. His medical license has been subsequently suspended.

**{¶5}** On July 28, 2012, Appellant posted an ad on Craigslist offering "$200 for a girl in need". This appears to be a common subterfuge, among others, for the solicitation of prostitutes on Craigslist. On the same day the ad was posted, Deanna Ballman responded. Thereafter, the two exchanged emails and text messages to arrange the details of their meeting. The agreement, as demonstrated by their electronic and text messaging, was that the two would meet and then travel to Appellant's residence, where he would pay Ms. Ballman to have sex with him.

**{¶6}** At approximately noon on July 31, 2012, Deanna went to the Kroger Grocery parking lot at 5161 Hampstead Village Center Way in New Albany, where she met Appellant and followed him to his home at 5077 Turner Close, New Albany, Ohio

43054. The meeting location is in close proximity to Appellant's home. (T. at 28). At the time, Ms. Ballman was nine months pregnant.

**{¶7}** While she was in his home, Appellant furnished Ms. Ballman with heroin, which was injected into her thigh. Shortly afterward, Ms. Ballman called her mother and indicated that she was not feeling well. (T. at 28-29). Sometime between 3:30 p.m. and 5:00 p.m., Ms. Ballman lost consciousness and began showing signs of respiratory distress. (T. at 29). At some time during that evening, Ms. Ballman died from an overdose of heroin.

**{¶8}** Fearing the consequences, Appellant made several attempts to hide his involvement with Ms. Ballman's death. These actions included deleting files from his phone, including the photos and video he took of her while she was unconscious, as well as driving Ms. Ballman's body and her unborn daughter to another location in her vehicle, where he left them after wiping down the car. (T. at 29-31). Appellant also cleaned his house.

**{¶9}** When the police began investigating the deaths, Appellant initially provided police with a fictitious version of events.

**{¶10}** On August 2, 2012, Appellant was interviewed by the Delaware County Sheriff's Detectives wherein he gave the following account of the events which occurred on July 31, 2012:

**{¶11}** Appellant stated more than once that he lived in a nice neighborhood and didn't want any "drama". He recounted that they met at Kroger, and she followed him back to his house. He said she was driving a gold four-door car, which she parked in his driveway. He poured himself a glass of wine. He offered her a glass of wine which she

declined, but she did have a glass of water. He said they talked and kissed in his living room and then proceeded to his bedroom.

{¶12} Appellant stated that he and Deanna engaged in oral, vaginal, and anal sex in his bed. He explained that after they finished having sex Deanna was bleeding and said she did not feel well. He recalled that she called her mother on her cell phone and both he and she spoke to her mother.

{¶13} Appellant stated that following the phone call, he took Deanna back to the Kroger parking lot. He said specifically that he helped her into the front passenger side of her car and that he drove her car. He remembered there were child seats in the backseat of Deanna's car. He stated that after he drove her to the Kroger's parking lot, he walked home and left Deanna seated in the front passenger seat of her car. He stated that he then ordered a pizza from Pizza Hut to be delivered to his home.

{¶14} He went on to state that following the delivery of the pizza, he walked back to the parking Lot to check on Deanna and found that she was still sitting in the front passenger seat. He claims that he asked her if she was ok, and she asked him how to get to State Route 161. He stated he then got back into her car and drove her to the 161 eastbound entrance ramp. Specifically, he stated that he drove out of Kroger onto Fodor Road eastbound, turned left onto New Albany Road, drove northbound past the eastbound ramp, U-turned back southbound and finally turned left onto the eastbound ramp. He stated that he then pulled onto the shoulder. He claimed that he left Deanna there, walked home, and did not see her thereafter.

{¶15} Deanna was found around noon on August 1, 2012. She was found just west of 12865 Bevelheimer Road in Delaware County, Ohio, in an open field on a hot

August day. Her pregnant body was found lying across the backseat of her Ford Taurus. The keys were in the ignition and all doors except the driver's door were locked. Deanna's purse was located in the car as well. Of note inside her purse was a bag of suspected black tar heroin, two BD safety Glide hypodermic syringes, and a spoon.

{¶16} The car was processed for forensic evidence. Appellant's right palm print was found on the rear passenger door of Deanna's car. The bag of suspected heroin was determined to be heroin. A mixture profile of DNA was found on the bag of black tar heroin. The mixture was consistent with Appellant, Deanna, and an unknown third person.

{¶17} Deanna's cell phone was not found in the car. Law enforcement attempted to locate her phone by tracing the signal, but it was never found. Police were able to track the phone's last known position to be in New Albany in close proximity to Appellant's residence.

{¶18} Detectives searched Deanna's apartment but nothing of relevance to the case was found; however, there was no evidence of drugs or drug use found in her apartment.

{¶19} A search warrant was executed for Appellant's home. Although Appellant had washed the sheets that were on his bed, Deanna's blood was found on the mattress pad from the bed. A used BD Safety Glide syringe 15, found to contain heroin residue, was also found in his garbage bin.

{¶20} Appellant's iPhone was seized for processing and was searched pursuant to a search warrant. A forensic analysis revealed that the contents of the phone had been erased on August 2, 2012. A search warrant was served on Apple, Inc., for

Appellant's iCloud account. The contents of his phone had been backed up to his iCloud account and these items were not erased when he wiped the contents of the phone. Thus, all of the pictures, video, and other miscellaneous content were retained by Apple, Inc. Relevant to this investigation, the account contained several photos and video clips made on July 31, 2012. The metadata contained in the photos and videos shows the date, time, and GPS coordinates of each item when they were created. All were taken at the Appellant's residence. Appellant took two videos of Deanna, at 6:34 p.m. and 6:57 p.m., respectively. In both videos, Deanna was laying on Appellant's bed, nude and unconscious, while he was performing sex acts upon her.[1] The videos also recorded Deanna's labored breathing, evidenced by sounds akin to snoring. These sounds are consistent with the respiratory distress that accompanies heroin overdose.

{¶21} In addition to the videos, Appellant also took two photos of Deanna while she was nude and unconscious. The photos were taken at 5:13 p.m. and 7:23 p.m. The photo taken at 5:13 p.m. was then attached to a Craigslist ad, posted by the Defendant at 5:21 p.m. that day, titled "Smooth hairless guy to fuck my drunk GO."  Appellant posted a second ad that day at 11:03 p.m. titled "Looking for a teenager to fuck my girl". Additionally, the iCloud data contained a photo the Defendant took of himself at 7:21 p.m. that day.

{¶22} Appellant's cellular telephone location was plotted during times relevant to the investigation. His phone remained in New Albany, in a location consistent with him being at his home, for most of the relevant time period. His phone sent/received a data

---

[1] The first video shows Appellant inserting his fist into Deanna's vagina up to his wrist. The second video shows Appellant masturbating over Deanna's body.  She is unconscious in both videos.

packet from a tower in the Whitehall area, at 9:04 p.m. on July 31, 2012. This is consistent with the statements of witnesses Shayle Remy and Joshua Lutz. According to both witnesses, Appellant came alone to their apartment in Whitehall sometime in the late afternoon/early evening of July 31, 2012, requesting that Remy get him heroin, which she had done for him previously. He acquired the heroin and left a short time later. He referenced having a "pregnant girl" at his house to both witnesses.

{¶23} Appellant also placed an online order for Donato's pizza on July 31, 2012, at 7:19 p.m. At 7:58 p.m. he called Donato's and changed the order from delivery to pick up. He never picked up the order. He then placed an online order with Pizza Hut at 9:44 p.m. and at 10:21 p.m. the Pizza Hut order was delivered by Matt Harmon. Harmon noted a gold sedan consistent with Deanna's car in Appellant's driveway at the time.

{¶24} As part of the investigation in this case, the FBI crime lab conducted an analysis of Deanna's hair for drug use and more specifically drug use history. It was revealed that Deanna was a member of the Army National Guard and, as such, was subject to drug testing. Deanna had tested negative for all drugs, including heroin, in January of 2012. That test was administered by the Army National Guard. The FBI's test findings were consistent with Deanna's lack of drug history and an acute exposure to heroin on July 31, 2012.

{¶25} Appellant Ali Salim was indicted on two counts of Murder in violation of R.C. 2903.02, unclassified felonies; one count of Rape in violation of R.C. 2907.02, a felony of the first degree; one count of Felonious Assault in violation of R.C. 2903.11, a felony of the second degree; one count of Corrupting Another with Drugs in violation of R.C. 2925.02, a felony of the second degree; one count of Kidnapping in violation of

R.C. 2905.01, a felony of the first degree, two counts of Tampering with Evidence in violation of R.C. 2921.12, felonies of the third degree; and one count of Abuse of a Corpse in violation of R.C. 2927.01, a felony of the fifth degree.

{¶26} On October 24, 2013, Appellant entered into a plea agreement. (T. at 34-35). Appellant entered pleas of guilty to amended Counts One and Two, each Involuntary Manslaughter in violation of R.C. 2903.04(A), felonies of the first degree; Count Eight, Tampering with Evidence in violation of R. C. 2921.12(A)(1), a felony of the third degree; Count Nine, Abuse of a Corpse in violation of R.C. 2927.01(B), a felony of the fifth degree; and an *Alford* plea of guilty to Count Three, Rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree.

{¶27} The trial court, after conducting a colloquy with Appellant, accepted his pleas and entered a finding of guilty as to each count. (T. at 35-37). A pre-sentence investigation was ordered prior to Appellant's sentencing hearing. (T. at 37-38). The trial court held Appellant's sentencing hearing on December 17, 2013. Prior to that date, the court received and reviewed sentencing memoranda submitted by the parties, as well as the pre-sentence report prepared by adult court services. Both parties presented arguments and, in the case of the State, victim impact testimony. The court then proceeded with sentencing.

{¶28} At sentencing, the trial court first noted that "it's clear under 2929.14(C) that the court is to reserve the longest prison term for those who would commit the worst forms of the offense." (Sent. T. at 19). The trial court further stated that "[t]he court has read your hypocratic (sic) oath and, in going through the PSI ... [q]uite frankly, this is the worst crime this court has ever seen ... but you are a man of medicine, sir, to allow

someone to die and you obviously were aware that they were struggling, respiratorily, is unthinkable." (Sent. T. at 19).

**{¶29}** Based on these findings, the trial court imposed a maximum sentence of eleven (11) years of incarceration and a $20,000.00 fine relative to both counts of Involuntary Manslaughter. (Sent. T. at 19-20). It similarly imposed the maximum eleven (11) year sentence on the rape count, as well as a $20,000.00 fine. *Id* The trial court ordered that these counts be served consecutively, stating it "[was] of the opinion that consecutive sentences are necessary in this case, quite frankly, because it was the worst crime I ever seen. Consecutive is not disproportionate to the seriousness of your conduct, and no single sentence would punish you adequately, to you, for what you did." *Id.*

**{¶30}** As to the tampering with evidence charge, the court noted that, "due to [its] conscience ... the court [could] not say this is the worst of those offenses that the court has seen, but it was bad;'' and thus it imposed a thirty (30) month sentence of incarceration, as well a $10,000.00 fine.

**{¶31}** The court likewise did not find that Appellant's abuse of a corpse offense was the worst of the offenses, and thus imposed a prison term of ten (10) months. The sentences on those counts were ordered to "be served consecutive for the same reasons ... Court finds that your behavior is so bad that you deserve consecutive sentences, and a consecutive sentence in this case does not or is not disproportionate of the offense which you committed." (Sent. T. at 21).

**{¶32}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

{¶33} "I. THE TRIAL COURT COMMITTED PLAIN ERROR BY SENTENCING APPELLANT WITHOUT CONSIDERING REQUIRED STATUTORY PROVISIONS AND WITHOUT MAKING MANDATORY FINDINGS OF FACT.

{¶34} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING MAXIMUM PRISON TERMS ON COUNTS ONE, TWO AND THREE, AND BY ORDERING THAT EACH PRISON TERM IMPOSED BE SERVED CONSECUTIVELY, EVEN THOUGH THE RECORD DID NOT SUPPORT THE APPROPRIATENESS OF THOSE SANCTIONS."

**I., II.**

{¶35} We shall address Appellant's assignments together, as they both assign error in sentencing.

{¶36} Appellant herein contends the trial court failed to consider the principles and purposes of sentencing set forth in R.C. §2929.11 and R.C. §2929.12 and failed to make the findings required by R.C. §2929.14(C)(4) before imposing consecutive sentences.

{¶37} The Supreme Court of Ohio in *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, set forth a two step process for examining felony sentences. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Id.* at ¶ 4. If this first step is satisfied, the second step requires that the trial court's decision be reviewed under an

abuse of discretion standard. *Id.* An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 19.

### *Principles and Purposes of Sentencing*

{¶38} R.C. §2929.11 sets forth the purposes of felony sentencing:

{¶39} "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶40} "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶41} "(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender."

{¶42} R.C. §2929.12 sets forth the factors the court is to consider in felony sentencing:

{¶43} "(A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

{¶44} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

{¶45} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

{¶46} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

{¶47} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

{¶48} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

**{¶49}** "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

**{¶50}** "(6) The offender's relationship with the victim facilitated the offense.

**{¶51}** "(7) The offender committed the offense for hire or as a part of an organized criminal activity.

**{¶52}** "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

**{¶53}** "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

**{¶54}** "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

**{¶55}** "(1) The victim induced or facilitated the offense.

**{¶56}** "(2) In committing the offense, the offender acted under strong provocation.

**{¶57}** "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

**{¶58}** "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

**{¶59}** "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

**{¶60}** "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

**{¶61}** "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

**{¶62}** "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

**{¶63}** "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has

demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

**{¶64}** "(5) The offender shows no genuine remorse for the offense.

**{¶65}** "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

**{¶66}** "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

**{¶67}** "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

**{¶68}** "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

**{¶69}** "(4) The offense was committed under circumstances not likely to recur.

**{¶70}** "(5) The offender shows genuine remorse for the offense."

**{¶71}** "The failure to indicate at the sentencing hearing that the court has considered the factors in R.C. 2929.11 and 2929.12 does not automatically require reversal." *State v. Reed,* 10th Dist. No. 09AP–1163, 2010–Ohio–5819, ¶ 8. "When the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." *Id.,* citing *Kalish* at ¶ 18, fn. 4. "A trial court's rote recitation that it has considered applicable factors satisfies the court's duty to follow the relevant statutes in sentencing an offender." *State v. Easley,* 10th Dist. No. 08AP–755, 2009–Ohio–2984, ¶ 19 (citations omitted). "The Code does not specify that the sentencing judge must use specific

language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett,* 88 Ohio St.3d 208, 215, 2000–Ohio–302.

**{¶72}** In the case *sub judice*, contrary to Appellant's claim, the judgment entry of conviction specifically states that the trial court "considered the two overriding purposes of felony sentencing set forth in Section 2929.11 of the Ohio Revised Code, and having balanced the seriousness and recidivism factors set forth in Section 2929.12 of the Ohio Revised Code, as well as the considerations in imposing Sanctions for a Felony set forth in Section 2929.13 ..." Dec. 23, 2013, Judgment Entry on Sentence at 2.

**{¶73}** In this case, the trial court went on to find:

**{¶74}** "1. The Court finds the offenses of Involuntary Manslaughter and Rape to be the worst form of said offenses this Court has seen in 45 years of working in the criminal justice system. There are no facts to overcome the presumption of prison."

**{¶75}** Furthermore, the record of Appellant's sentencing hearing demonstrates that prior to imposing sentence, the trial court gave careful and substantial deliberation to the sentencing provisions, the need to protect the public from Appellant, and the serious harm caused in this case. The trial court stated:

**{¶76}** "Going through all of the sentencing factors that the court is required to consider, it's clear under 2929.14(C) that the court is to reserve the longest prison sentence for those who would commit the worst forms of the offense.

**{¶77}** "The court has read your hypocratic oath, and in going through the PSI, the court does not understand why the litigants are concerned about the character of the victim. Quite frankly, this is the worst crime this court has ever seen, has nothing to do

with the victim, victim's background, but you are a man of medicine, sir, to allow someone to die and you obviously were aware that they were struggling, respiratorily, is unthinkable." (Sent. T. at 18-19).

**{¶78}** Given the foregoing considerations by the trial court, and the language utilized in its sentencing entry, we find that the trial court clearly considered the purposes and principles of sentencing under R.C. §2929.11 and R.C. §2929.12 prior to imposing Appellant's sentence.

### *Consecutive Sentences*

**{¶79}** Next, Appellant argues the trial court erred by failing to make the findings required by R.C. §2929.14(C)(4) before imposing consecutive sentences. We disagree.

**{¶80}** 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The revisions to the felony sentencing statutes under 2011 Am.Sub.H.B. No. 86 now require a trial court to make specific findings when imposing consecutive sentences.

**{¶81}** R.C. §2929.14(C) states:

**{¶82}** (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶83}** (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶84}** (b) The harm caused by the multiple offenses was so great or unusual that no single prison terms for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

**{¶85}** (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶86}** The Supreme Court of Ohio, in the recent decision of *State v. Bonnell,* Supreme Court Case No. 2013–0167, held that in order to sentence a defendant to consecutive terms of imprisonment, a trial court must make the findings required by state law in R.C. §2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry. The Supreme Court further held that the trial court has no obligation to state reasons in support of its findings. In so holding, the Court explained:

**{¶87}** "R.C. 2929.14(C)(4) requires the trial court to make statutory findings prior to imposing consecutive sentences, and Crim.R. 32(A)(4) therefore directs the court to state those findings at the time of imposing sentence. This accords with our prior decision in *State v. Edmonson,* 86 Ohio St.3d 324, 715 N.E.2d 131 (1999), construing the verb "find" for purposes of former R.C. 2929.14(B), Am.Sub.S.B. No. 1, 148 Ohio Laws, Part IV, 7910, 7922, and explaining that a finding in these circumstances means only that "the [trial] court must note that it engaged in the analysis" and that it "has

considered the statutory criteria and specifie[d] which of the given bases warrants its decision." *Id.* at 326, 715 N.E.2d 131.

**{¶88}** "Notably, however, rather than also reviving the language of former R.C. 2929.19(B)(2), which we severed in *Foster,* the General Assembly repealed that language and eliminated the substantive requirement for a court to give reasons for imposing consecutive sentences. We recognize that some statutes require a trial court to give reasons in support of its findings, *e.g.,* R.C. 2929.03(F) and 2929.19(D), but no statute directs a sentencing court to give or state reasons supporting imposition of consecutive sentences. Thus, a trial court is not required by Crim.R. 32(A)(4) to give reasons supporting its decision to impose consecutive sentences.

**{¶89}** "On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court "to review the record, including the findings underlying the sentence" and to modify or vacate the sentence "if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code." But that statute does not specify where the findings are to be made. Thus, the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences.

**{¶90}** "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel. *See* Crim.R. 32(A)(4). And because a court speaks through its journal, *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 47, the court should also incorporate its statutory findings into the

sentencing entry. However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."

**{¶91}** Additionally, the Court in *Bonnell* further explained that "a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." (citations omitted). The Court cautioned however that "a nunc pro tunc entry cannot cure the failure to make the required findings at the time of imposing sentence." (citations omitted).

**{¶92}** Upon review of the record in the case *sub judice* pursuant to *Bonnell*, we find that the trial court made the findings required by R.C. §2929.14(C)(4) before imposing consecutive sentences.

**{¶93}** At the sentencing hearing, following the imposition of sentence on the involuntary manslaughter and rape charges, the trial court stated:

**{¶94}** "The incarceration, as to those three counts, will be served consecutively, not concurrent. Court is of the opinion that consecutive sentences are necessary in this case, quite frankly, because it was the worst crime I ever seen. Consecutive is not disproportionate to the seriousness of your conduct, and no single sentence would punish you adequately, to you, for what you did." (Sent. T. at 20).

**{¶95}** Following the imposition of sentence on the charges of tampering with evidence and abuse of a corpse, the court again stated:

**{¶96}** "Court finds that your behavior is so bad that you deserve consecutive sentences, and a consecutive sentence in this case does not or is not disproportionate of the offense which you committed. (Sent. T. at 21).

**{¶97}** Additionally, in its Judgment Entry of sentence, the trial court stated:

**{¶98}** "1. The Court finds the offenses of Involuntary Manslaughter and Rape to be the worst form of said offense this Court has seen in 45 years of working in the criminal justice system. There are no facts to overcome the presumption of prison.

**{¶99}** "2. Consecutive sentences are necessary to punish the Defendant and are not disproportionate to the seriousness of the Defendant's 's [sic] conduct.

**{¶100}** "3. At least two of the multiple offenses were committed as part of a course of conduct and the harm cause [sic] was so great that no single prison term for any of the offenses committed adequately reflects the seriousness of the Defendant's conduct."

**{¶101}** In its Judgment Entry, the trial court also stated it had "considered the factual background of this case, the Pre-Sentence Report …, the Assistant Prosecuting Attorney's statement, the Defendant's counsel's statement" in addition to "the two overriding purposes of felony sentencing" and that it had "balanced the seriousness and recidivism factors" as well as "the considerations in imposing Sanctions for a Felony …". (Dec. 23, 2013, Judgment Entry at 2).

**{¶102}** Here, the trial court clearly believed that Appellant's actions warranted a harsh sentence. Upon review of the record, we find no abuse of discretion in the trial court's imposition of a lengthy prison sentence on Appellant, as he pled guilty to a number of serious offenses. The more crimes an individual commits, and the more

serious the crimes, the more likely it is that the ultimate prison sentence will indeed be a lengthy one." *State v. Watkins,* 10th Dist. No. 13AP–133, 2013–Ohio–5544, ¶ 19 (noting that the severity of sentence resulted in part from the number of crimes committed).

**{¶103}** Appellant's Assignments of Error are overruled.

**{¶104}** Based on the foregoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.

By: Wise, J.

Farmer, J., concurs.

Hoffman, P. J., concurs in part and dissents in part.

JWW/d 0723

*Hoffman, P.J., concurring in part and dissenting in part*

{¶105} I concur in the majority's analysis and disposition of Appellant's first assignment of error.

{¶106} I respectfully dissent from the majority's disposition of Appellant's second assignment of error. I find the trial court failed to make a finding at the sentencing hearing consecutive sentences were necessary because of the danger the offender poses to the public. I would sustain Appellant's second assignment of error and remand the case to the trial court for resentencing.


_____
HON. WILLIAM B. HOFFMAN